No. 76,989

STATE OF KANSAS, *Appellee*, v. JEFFREY S. COLLIER *Appellant.*
(952 P.2d 1326)

Opinion filed January 23, 1998.

*Jessica R. Kunen*, chief appellate defender, argued the cause and was on the briefs for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is a sentencing appeal. In the previous appeal in this case, *State v. Collier*, 259 Kan. 346, 913 P.2d 597 (1996) (*Collier I*), we affirmed Collier's convictions but vacated the hard 40 sentence for his premeditated first-degree murder conviction because the record did not reflect that the mandatory notice that the State would seek the hard 40 penalty was properly filed with the court at the time of arraignment as required by K.S.A. 1993 Supp. 21-4624.

Upon remand, the State, over Collier's specific objection, was allowed to present testimony of the prosecuting attorney, the district judge who presided at the arraignment, a clerk of the court, and the chief deputy of the criminal department as to their recollections of the filing of the notice to request the hard 40 sentence and the usual procedures for the filing of documents in the trial court.

After hearing the evidence, the trial court found the notice of intent to seek the hard 40 sentence *had* been properly filed with the court. It then reimposed the hard 40 sentence, as well as the aggravated robbery sentence which had been imposed in *Collier I* but had not been an issue in that appeal.

Collier's appeal in this case is limited to sentencing issues only. He contends: (1) Reimposition of the hard 40 sentence contravened the decision and mandate in *Collier I* in violation of due process of law under the Fourteenth Amendment and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, plus the principles of res judicata and collateral estoppel; (2) the trial court erred by concluding the evidence presented at the resentencing hearing supported a finding that the State had complied with the notice provisions of K.S.A. 1993 Supp. 21-4624; (3) the hard 40 sentence was imposed without notice or the procedural protections of K.S.A. 1993 Supp. 21-4624; and (4) the State cannot seek, nor the trial court impose, an upward departure sentence for Collier's aggravated robbery conviction because such a departure was not sought at the original sentencing hearing and the aggravated robbery sentence was never vacated.

We need not here restate the entirety of the majority decision in *Collier I* on the sentencing issue which is found in 259 Kan. at

360-65. In a nutshell, we there held: (1) The record in *Collier I* did not show that the notice to request imposition of the hard 40 sentence was filed with the court at the time of arraignment; (2) the State improperly attempted to supplement the record under Supreme Court Rule 3.04 (1997 Kan. Ct. R. Annot. 23) and asked us to base our decision on matters outside a properly preserved record; (3) *Collier I* was controlled by our decision in *State v. Peckham*, 255 Kan. 310, 875 P.2d 257 (1994); and (4) the failure of the State to comply with the requirements of K.S.A. 1993 Supp. 21-4624 required the hard 40 sentence entered therein to be vacated.

Although Collier makes the arguments previously summarized concerning violations of due process, double jeopardy, res judicata, and collateral estoppel, this case is more readily decided on the basis of his argument that when the hard 40 sentence in *Collier I* was vacated, such ruling became the settled law of this case. Thus, the issue of the filing of the notice may not again be relitigated, nor may the nonexistent record in *Collier I* regarding the filing be created by the May 1996 recollections of the events by several participants at the November 1993 arraignment which were not shown by the record.

The law of the case doctrine has long been applied in Kansas and is generally described in 5 Am. Jur. 2d, Appellate Review § 605 in the following manner:

"The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts."

Historically, the law of the case doctrine was first stated by the United States Supreme Court in *Himely v. Rose*, 9 U.S. (5 Cranch) 313 (1809), where it was applied to assert that the Court would not revisit issues which were finally decided by it in a previous appeal. Another United States Supreme Court case linked to the

origins of the law of the case doctrine is *Skillern's Ex'rs v. May's Ex'rs*, 10 U.S. (6 Cranch) 267 (1810), which applied the rule to declare that once issues are finally decided, the lower court has no choice but to follow the mandate of the Court.

The doctrine has similarly long been the law of Kansas and was explained and adopted in *Headley v. Challiss*, 15 Kan. 602, 605-06 (1875), where Justice Brewer stated:

> "This is a proceeding in error to review the decision of the district court overruling a motion to set aside a judgment. The judgment was rendered in an action to foreclose a mortgage, and upon service only by publication. . . . (*Challiss v. Headley*, 9 Kan. 684.) Upon abundant authority, and well-settled principles, the decision at that time has become the established law of the case.' [Citations omitted.] Whatever therefore, was at that time decided, is not now a matter for re-examination."

In applying this rule, this court shortly thereafter stated in *Central Branch U.P.R. Co. v. Shoup*, 28 Kan. *394, Syl. ¶ 2 (1882), that the law of the case was not "a cast-iron rule, incapable of relaxation under any circumstances, yet it must be adhered to where the question is one of great doubt, has been thoroughly considered, and is one whose decision involves no serious injury to general rights."

While the law of the case rule is not inflexibly applied to require a court to blindly reiterate a ruling that is clearly erroneous, see *Henry v. Railway Co.*, 83 Kan. 104, 109 Pac. 1005 (1910); *Railway Co. v. Merrill*, 65 Kan. 436, 70 Pac. 358 (1902), a majority of this court remains convinced that *Collier I* was properly decided, and a unanimous court holds a hard 40 sentence in this case may no longer be considered or imposed.

The cases stating this rule are legion in number, and the rule has been applied in many Kansas cases. In *Waddell v. Woods*, 160 Kan. 481, Syl. ¶ 3, 163 P.2d 348 (1945), we held that when a second appeal is brought to this court in the same case, the first decision is the settled law of the case on all questions involved in the first appeal and reconsideration will not be given to such questions.

In *Bartlett v. Davis Corporation*, 219 Kan. 148, 153, 547 P.2d 800 (1976), the court relied on *Waddell v. Woods* and stated:

"[W]hen a second appeal in the same action is brought to this court, the first decision is the law of the case on all questions involved and decided in the first appeal and such questions will not be reconsidered. However, when this court, upon appeal, merely reverses a district court on its ruling in connection with a motion to dismiss or for summary judgment, and no judgment is directed, the effect of the ruling by this court is the same for the purpose of further proceedings in the district court, as if the district court had made the correct ruling in the first instance, except, of course, that the district court has no authority to change or modify the ruling made by this court."

Confusion at times arises as to whether the doctrine being applied is the law of the case or res judicata, which is when a second cause of action is filed in order to attempt to relitigate issues between the same parties. In *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 720-21, 840 P.2d 1107 (1992), we disposed of an attempt to strike an earlier motion through res judicata by ruling:

"A more appropriate basis for denying Steele's motion to strike is embodied in the law of the case doctrine. In *Renfro v. City of Emporia, Kan.*, 732 F. Supp. 1116, 1117 (D. Kan. 1990), *aff'd* 948 F.2d 1529 (1991), the court explained under the
' "law of the case doctrine," once issues are decided by the court, those issues should not be relitigated or reconsidered unless they are clearly erroneous or unless some manifest injustice has been imposed. This doctrine is based on public policy favoring an end to litigation and encouraging dispute resolution by preventing continued re-argument of decided issues.' "

Finally, the *Steele* case was most recently utilized as authority in *City of Wichita v. Rice*, 20 Kan. App. 2d 370, 376, 889 P.2d 789 (1995), where the opinion declared: "Ordinarily, under the law of the case doctrine, once an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice."

Although Collier contended that the principles of res judicata and collateral estoppel should be invoked, we believe the preclusive application of the law of the case doctrine is more appropriate in this case. The similaries and the differences of these preclusionary doctrines are discussed in Note, *McDonald's Corp. v. Hawkins and the "Law of the Case" Doctrine in Arkansas*, 50 Ark. L. Rev. 127, 130-31 (1997):

"The doctrine of the law of the case is similar to other preclusionary doctrines such as collateral estoppel, res judicata and stare decisis. While all of the doctrines act to prevent a party from raising issues that have already been decided, differences do exist between them.

"The law of the case and collateral estoppel are different in that collateral estoppel prevents the relitigation of issues in successive suits between the same parties; the law of the case prevents relitigation of the same issues within successive stages of the *same* suit. Res judicata differs from the law of the case in that it settles the rights of the parties once the judgment is final. The law of the case does not settle rights; it only settles the law to be applied in determining the rights of the parties. Also, many courts view res judicata as a rule of law, whereas the law of the case is merely a practice to guide the court.

"The law of the case probably most resembles the doctrine of stare decisis. Stare decisis dictates that like cases should be decided alike in the same jurisdiction. Stare decisis has a much broader impact than the law of the case, though, because it applies equally to all litigants, even strangers to the existing suit."

When we stated in *Collier I*, 259 Kan. at 365, that we were following *Peckham* and that our decision was "consistent with *Johnson*, 255 Kan. 140; *State v. Deavors*, 252 Kan. 149, Syl. ¶ 6, 843 P.2d 695 (1992), *cert. denied* 125 L. Ed. 2d 676 (1993)," we were clearly following our previous decisions. Our ruling then became the law of this case, precluding Collier from being resentenced to a hard 40 term of imprisonment.

Additionally, the result we reach is compelled by consideration of our statute relating to the effect of our appellate court decisions, giving rise to what is referred to at times as the "mandate rule." K.S.A. 60-2106 relates to judgments and mandates of appellate court decisions, and subsection (c) in applicable part provides:

"When . . . a decision of an appellate court becomes final, such court shall promptly cause to be transmitted to the clerk of the district court its mandate containing such directions as are appropriate under the decision. A copy of the opinion of the court shall accompany and be a part of the mandate. . . . Such mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."

In commenting on this provision, Judge Gard compared the provision to its predecessor, G.S. 1949, 60-3330, and stated:

"This subsection is a constructive revision of the former statute but does not change its general effect. . . . The practice of spreading the mandate on the journal is no longer necessary, though not necessarily prohibited. The direction of the former section that the trial court should comply with the mandate seems hardly necessary and is omitted. It is now simply provided that the mandate becomes a part of the judgment and controls the future conduct of the case, if further proceedings are to be had." 2 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-2106(c) (1979).

The plain directive of this provision was recognized in *State v. Bloomer*, 197 Kan. 668, 674, 421 P.2d 58 (1996), where this court's mandate in a previous appeal was held to "properly [become] a part of the judgment controlling in the conduct of any further proceedings in the case (K.S.A. 60-2106 [c])."

A further statutory requirement relating to the obligations of the district courts as to appellate decisions is set forth in K.S.A. 20-108:

"An appellate court of this state may require the district court of the county where any action or proceeding shall have originated to carry the judgment or decree of the appellate court into execution; and the same shall be carried into execution by proper proceedings, by such district court, according to the command of the appellate court made therein."

There is a dearth of appellate decisions relating to this statutory directive, but in *Duffitt & Ramsey v. Crozier, Judge*, 30 Kan. 150, Syl. ¶ 1, 1 Pac. 69 (1883), it was held:

"In cases decided by the supreme court, brought on error, when the facts are found by the trial court, and a mandate is sent to that court directing it to render judgment upon the findings for defendant below, the case is not to be retried by the district court upon the old facts, nor upon facts which ought to have been and might have been presented upon the trial; nor is the court below, after receiving the mandate, authorized to make additional findings upon the evidence originally offered, to aid or cure the judgment pronounced erroneous by the supreme court and ordered to be reversed."

Although the wording of 28 U.S.C. § 2106 (1994) differs slightly from its Kansas counterpart, K.S.A. 60-2106, there have been extensive discussions of the law of the case rules and the mandate rule in a large number of federal cases. A recent example is *Ute Indian Tribe v. State of Utah*, 935 F. Supp. 1473, 1516-17 (D. Utah 1996), where it was stated:

" 'Law of the case' rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.' 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedures § 4478, at 788 (1981).

'Of these rules, the most compelling is the mandate rule. This fundamental rule binds every court to honor rulings in the case by superior courts. As the Supreme Court has stated, "In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 306, 68 S. Ct. 1039, 1040, 92 L. Ed. 1403 (1948). The statutory authority for the power of the appellate courts dates from the first Judiciary Act of 1789 and is now found in 28 U.S.C. § 2106.'

*Casey v. Planned Parenthood of Southeastern Pennsylvania,* 14 F.3d 848, 856 (3d Cir. 1994) (footnotes omitted.) 'The so-called "mandate rule" is simply a subspecies of the venerable "law of the case" doctrine, a staple of our common law as old as the Republic. . . .' *Federated Rural Electric Insurance Corp. v. Arkansas Electric Cooperatives, Inc.,* 896 F.Supp. 912, 914 (E.D. Ark. 1995) (citation omitted).

'Whatever was before the [superior] Court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; nor give any other or further relief; nor review it upon any matter decided on appeal, for error apparent; not intermeddle with it, further than to settle so much as has been remanded.'

*Sibbald v. United States,* 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838). Indeed, 'the rule has remained essentially unchanged in nearly one hundred and fifty years':

'It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.

'A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'

*Casey v. Planned Parenthood of Southeastern Pennsylvania,* 14 F.3d at 857 (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir. 1985) (citations omitted))."

For a recent 10th Circuit case from Kansas involving a slightly different application of these same rules, see *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1553 (10th Cir. 1991), *cert. denied* 504 U.S. 910 (1992).

We need not delve into the other sets of problems intertwined in the law of the case terminology, but an excellent discussion of

them is found in 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478 (1981).

The issue before us is simply one of requiring the trial court to comply with and follow the decision of the majority opinion in *Collier I*, rather than permitting the trial court to attempt to instigate the ruling and effect of the minority opinion filed in that case.

The trial court is instructed to resentence Collier to the lesser allowed sentence other than that of a hard 40, as the statutes require.

Due to this conclusion, Collier's second and third issues are extraneous and need not be discussed.

We need not reach or discuss in detail the request for an advisory opinion relating to the State's attempt at resentencing to obtain an upward departure of the 97-month sentence imposed for the aggravated robbery conviction. The aggravated robbery conviction was affirmed by *Collier I*, and the sentence imposed was not an issue in the previous appeal, nor is it now an issue. The sentence is and remains in existence. It may not be the subject of reconsideration in any manner by the trial court upon the resentencing in this case for the first-degree murder conviction.

Reversed and remanded for resentencing on the first-degree murder conviction in accordance with the express direction of this opinion.

LOCKETT, J., concurring in the result.