IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,503

In the Matter of the Care and Treatment of CECIL W. EMERSON.

SYLLABUS BY THE COURT

A district court does not have jurisdiction over a litigant's motion to file a direct appeal out of time if a previous direct appeal by the same litigant had been dismissed by an appellate court. Jurisdiction over the appeal remains in the appellate court that dismissed the first appeal; the appeal can proceed only if the appellate court withdraws its mandate and allows the appeal to proceed.

Review of the judgment of the Court of Appeals in 52 Kan. App. 2d 421, 369 P.3d 327 (2016). Appeal from Sedgwick District Court; GREGORY L. WALLER and PAUL CLARK, judges. Opinion filed April 7, 2017. Appeal dismissed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*Dwight R. Carswell*, assistant solicitor general, argued the cause, and *Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises the question of whether a district court has jurisdiction to authorize the filing of an out-of-time direct appeal after a prior direct appeal by the same litigant had been dismissed by the Court of Appeals. We hold the district court lost jurisdiction when the initial appeal was docketed in the Court of

1

Appeals, and, therefore, the district court could not effectively set aside an order of the Court of Appeals and reinstate an appeal. Because the district court did not have jurisdiction, neither this court nor the Court of Appeals obtains jurisdiction to review the district court's rulings. Accordingly, we dismiss this appeal.

FACTS AND PROCEDURAL BACKGROUND

In August 1999 the State filed a petition against Cecil Emerson pursuant to the Sexually Violent Predators Act (SVPA). A jury found Emerson was a sexually violent predator, and the district court accordingly ordered Emerson to be "committed to the custody of the Secretary of Social and Rehabilitation Services for control, care and treatment until such time as respondent's mental abnormality or personality disorder has so changed that respondent is safe to be at large."

Emerson moved for judgment as a matter of law or in the alternative for a new trial, and the district court denied the motion on January 5, 2001. In February 2001, Emerson filed a notice of appeal; he subsequently docketed the case in the appellate courts by filing several documents with the clerk of the appellate courts, including a docketing statement and a certified copy of his notice of appeal. The Court of Appeals ultimately dismissed Emerson's appeal in 2002 after his counsel failed to file a brief despite four extensions of time and a final warning.

Since that time, as required by K.S.A. 59-29a08, the Secretary of the Kansas Department of Social and Rehabilitation Services or its successor, the Secretary of the Kansas Department for Aging and Disability Services, has conducted a yearly review and reported to the district court regarding Emerson's progress, the current state of his mental condition or personality disorder, and his treatment staff's recommendation as to whether

2

he should be authorized to petition the district court for release with the Secretary's approval. Each year, the Secretary notified Emerson that his mental condition or personality disorder had not changed sufficiently so that it would be safe for him to be at large. Emerson also received annual notice that he had the right to petition for release over the Secretary's objection. In some years, he did not waive his right to further proceedings—although he never actually petitioned the district court for release—and in other years he formally waived further proceedings. And each year, the district court found Emerson should remain in the custody of the Secretary for further care and treatment.

Then, in July 2014, Emerson, represented by new and present counsel, moved the district court to permit an out-of-time appeal of the underlying ruling that he was a sexually violent predator. Counsel argued Emerson's case fell under the third exception permitting an out-of-time appeal set out in *State v. Ortiz*, 230 Kan. 733, 736, 640 P.2d 1255 (1982) (allowing out-of-time appeal "only in those [criminal] cases where a defendant either [1] was not informed of his or her rights to appeal or [2] was not furnished an attorney to exercise those rights or [3] was furnished an attorney for that purpose who failed to perfect and complete an appeal").

The State responded that the district court lacked authority to permit an out-of-time appeal since it could not amend a notice of appeal filed as long ago as February 2001 or order an appellate court to reinstate the appeal. It also argued the timeliness of a notice of appeal was jurisdictional and Emerson's proposed second notice of appeal would not cure the Court of Appeals' 2002 dismissal of his case. The State also noted that Emerson had been committed since December 13, 2000, and had repeatedly waived further court proceedings and agreed to stay in treatment.

At a hearing on Emerson's motion, the district court stated that although Emerson's case was "a civil action, it is a quasi-criminal affair. The appellate courts have recently mentioned in particular that many of the things that occur within a sexual predator case should be treated as [if] they were criminal." The State reminded the district court that in Emerson's case a notice of appeal had been filed and the Court of Appeals had actually dismissed the case—his case thus did not involve circumstances where a notice of appeal had not been filed in the first instance. The district court ruled that "this case is one that is presently in a status where the Court has jurisdiction" and proceeded to hear testimony from Emerson. After hearing the evidence and counsel's arguments, the district court ruled that it would give Emerson "the right to appeal based upon the fact that his previous counsel did nothing after a notice of appeal was filed and did not communicate with Mr. Emerson that the appeal had been dismissed." The district court then directed Emerson to "prepare a new notice of appeal directed toward this case."

On March 4, 2015, Emerson filed a notice of appeal "from all findings and rulings of the [district court]."

In deciding the appeal, the Court of Appeals noted neither party challenged the district court's conclusion that the third *Ortiz* exception applied, but it then acknowledged its "duty to question jurisdiction on its own initiative." *In re Emerson*, 52 Kan. App. 2d 421, 423-24, 369 P.3d 327 (2016). Ultimately, the Court of Appeals rejected application of any *Ortiz* exceptions in Emerson's case, as they did not apply to such civil proceedings. *Emerson*, 52 Kan. App. 2d at 424-25. Instead, the Court of Appeals applied *Albright v. State*, 292 Kan. 193, 251 P.3d 52 (2011), which had been filed under K.S.A. 60-1507, to conclude that Emerson's trial counsel's deficiencies "resulted in the loss of the ability to pursue a procedure"—an appeal—and thus Emerson was entitled to an out-of-time appeal based on principles of fundamental fairness. 52 Kan. App. 2d at 425-26.

4

The court then rejected Emerson's arguments. 52 Kan. App. 2d at 436-39. Accordingly, the Court of Appeals affirmed the district court's decision. 52 Kan. App. 2d at 439.

We granted Emerson's petition for review.

ANALYSIS

"It is axiomatic and this court has consistently held that it is our duty to raise the question of jurisdiction on our own motion, and, if the trial court lacked jurisdiction, the appellate court likewise does not acquire jurisdiction over the subject matter of the appeal." *Sandlin v. Roche Laboratories, Inc*., 268 Kan. 79, 85, 991 P.2d 883 (1999); see *Albright*, 292 Kan. at 197 ("A question of subject matter jurisdiction may be raised at any time by a party or by a court, including an appellate court."); *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009) (noting that parties cannot confer subject matter jurisdiction by consent, *e.g.*, or waiver). Before us, the parties focus on whether *Ortiz* or *Albright* provides the correct basis for analyzing Emerson's motion. They have essentially abandoned their previous arguments about whether the district court had jurisdiction after the Court of Appeals had dismissed the first appeal.

Nevertheless, exercising our independent duty to review our jurisdiction, we question whether the district court had jurisdiction to order a *second* direct appeal. We conclude the serial nature of this appeal distinguishes this case from those relied upon by the district court and the Court of Appeals. In this case, the district court lacked jurisdiction because Emerson had previously filed a timely notice of appeal and docketed his direct appeal, which divested the district court of jurisdiction and conferred jurisdiction on the Court of Appeals. A few basic principles of appellate jurisdiction help to explain the basis for this holding.

5

First, "the right to appeal is entirely statutory," and "the limits of appellate jurisdiction are imposed by the legislature." *State v. Berreth*, 294 Kan. 98, 110, 273 P.3d 752 (2012); see *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009) ("Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute . . . ."). This means that jurisdiction depends on application of statutes and presents a question of law over which this court exercises unlimited review. *Berreth*, 294 Kan. at 109.

Second, "[a]n appellate court's jurisdiction depends on several factors, including the timely filing of a notice of appeal." *Albright*, 292 Kan. at 194. Pursuant to K.S.A. 59-29a07, a jury's sexually violent predator determination "may be appealed in the manner provided for civil cases," meaning Article 21 of Chapter 60 of the Kansas Statutes. Those statutes address many aspects of an appeal, including when it must be initiated, stating: "When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be 30 days from the entry of judgment." K.S.A. 60-2103(a) (also setting forth a statutory exception to the 30-day timeframe "upon a showing of excusable neglect" by the party, in which case the deadline may be extended by 30 days); *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, 120, 260 P.3d 387 (2011) (prohibiting courts from using equitable exceptions to jurisdictional requirements such as the "unique circumstances doctrine").

Third, a party must follow the required procedures for bringing an appeal and those actions can dictate whether jurisdiction of a case moves from the district court to the appellate courts. Pursuant to K.S.A. 60-2103(a), "[a] party may appeal from a judgment by filing with the clerk of the district court a notice of appeal." Emerson took this step in February 2001. The Kansas Supreme Court Rules specify the additional

actions a party must take in order to docket an appeal with the clerk of the appellate courts—that is, the actions necessary to "perfect" an appeal: The appealing party must pay an appellate docket fee (or file documents establishing indigency) plus file specified documents with the clerk of the appellate courts, including a docketing statement. See Kansas Supreme Court Rule 2.04 (2017 Kan. S. Ct. R. 15). In *Honeycutt v. City of Wichita*, 251 Kan. 451, 461, 836 P.2d 1128 (1992), this court referred to the "simultaneous jurisdiction" of the district court and the appellate court during the period between the filing of a notice of appeal and its docketing, and this court has authorized the district court to dismiss an appeal if a party files a notice of appeal but fails to take the steps necessary to docket the appeal. Kansas Supreme Court Rule 5.051 (2017 Kan. S. Ct. R. 32).

Once an appeal is actually docketed with the appellate courts, the district court does not have authority to dismiss the appeal. See K.S.A. 60-2103(a) (granting "appellate court having jurisdiction" the authority to impose "remedies" for failure to comply with appellate procedures); see also Kansas Supreme Court Rule 5.05 (2017 Kan. S. Ct. R. 32) (appellate court may dismiss an appeal for "a substantial failure to comply with rules" of the court). The appellate court retains jurisdiction, and it is axiomatic that only it, or a court reviewing that order on appeal, has jurisdiction to change the order. *Cf. State v. Fountaine*, 196 Kan. 638, 639, 414 P.2d 75 (1966) (withdrawing mandate and allowing appeal to proceed because effective assistance of counsel had not been provided in initial appeal).

Moreover, even if a district court had jurisdiction, it would lack authority to change the Court of Appeals' decision to dismiss the appeal. In fact, under K.S.A. 60-2106(c) a mandate of an appellate court "shall be controlling in the conduct of any further proceedings necessary in the district court." And K.S.A. 20-108 states that a

7

district court must execute any further proceedings "according to the command of the appellate court made therein." As this court recently held, "[u]nder the plain language of these statutes, a district court is required to apply the mandate without exception." *State v. Kleypas*, 305 Kan. 224, 296-97, 382 P.3d 373 (2016); see also *State v. Collier*, 263 Kan. 629, Syl. ¶ 4, 952 P.2d 1326 (1998) ("[T]he trial court must proceed in accordance with the mandate and the law of the case as established on appeal.").

Applying these principles to the circumstances of this case, given that Emerson filed a notice of appeal in 2001 and followed up by docketing that appeal, the district court lost jurisdiction. The Court of Appeals obtained jurisdiction and acted within its authority when it dismissed Emerson's appeal after no brief was filed. No further appeal occurred; consequently, only that court had the jurisdiction or the authority to change its order. Yet, by authorizing a new appeal from the trial, the district court essentially countermanded the Court of Appeals order of dismissal and its mandate. This it could not do.

Emerson's reliance on *Ortiz* does not help him establish the district court's jurisdiction because it is factually distinguishable:  Neither Ortiz nor his counsel had filed a notice of appeal after his conviction and sentencing, and the district court retained jurisdiction. See 230 Kan. at 734. Consequently, the *Ortiz* court did not address Emerson's situation. But it did note that "[t]he basis for this procedure may be found in the federal cases," 230 Kan. at 735, and federal courts have addressed the appropriate procedure for seeking relief when an ineffective assistance of counsel claim is brought after an appellate court has dismissed a docketed appeal.

For example, in *United States v. Winterhalder*, 724 F.2d 109, 110 (10th Cir. 1983), the district court, after concluding that appellate counsel had "not follow[ed] through with

8

the appeal," ordered the filing of a new notice of appeal, "which would purportedly resurrect defendant's earlier direct criminal appeal." 724 F.2d at 111. The Tenth Circuit rejected this as a remedy available to the district court, however, because jurisdiction had transferred from "the district court to the court of appeals, and the power to reinstate an appeal previously dismissed for failure to prosecute lies with the court of appeals, not the district court." 724 F.2d at 111. The Tenth Circuit agreed with other federal courts of appeals that had held "'the remedy is by way of a motion directed to [the appellate] court asking for a recall of the mandate or certified judgment so that [the appellate] court may determine whether the appeal should be reinstated.'" 724 F.2d at 111 (quoting *Williams v. United States*, 307 F.2d 366, 368 [9th Cir.1962], and citing as additional authority *Rivera v. United States*, 477 F.2d 927, 928 [3d Cir.1973]; and *Starke v. United States*, 338 F.2d 648, 649 [4th Cir.1964]).

We agree this is the necessary procedure when a direct appeal has been dismissed by an appellate court and a litigant seeks to have the appeal reinstated. And this court has done so when requested. *E.g.*, *Fountaine*, 196 Kan. at 639. But that relief cannot be obtained through an *Ortiz*-based proceeding.

The Court of Appeals did not rely on *Ortiz,* however. Instead, it reasoned that the case would not apply in a civil action under the Sexually Violent Predator Act and looked to caselaw applying K.S.A. 60-1507. But the Court of Appeals did not examine the question of whether the district court would have had jurisdiction even if these civil, rather than criminal, caselaw principles applied.

Certainly, a motion under K.S.A. 60-1507 grants a district court jurisdiction over claims of ineffective assistance of appellate counsel. See *Albright*, 292 Kan. at 207. Nevertheless, as Emerson's counsel recognized at oral argument, if he were to bring a

9

collateral action, he must do so under K.S.A. 60-1501. See, *e.g.*, *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 11, 287 P.3d 855 (2012) ("We hold that due process guarantees a person facing civil commitment under the KSVPA a right to counsel at trial, and that person may challenge the effectiveness of his or her trial counsel on direct appeal or under K.S.A. 60-1501."); see also *Kleparek v. State*, 964 So. 2d 225, 226 (Fla. Dist. App. 2007) (ruling, in proceedings similar to the SVPA, that defendant is not entitled to relief via an untimely notice of appeal, but rather "the proper vehicle is instead a petition for writ of habeas corpus seeking belated review of the lower tribunal's order"). But K.S.A. 2016 Supp. 60-1501(c) imposes a time limit for filing a petition, and Emerson has not established that he could bring such an action.

Even if we were to consider Emerson's motion as a petition under 60-1501 (and assuming it had been timely filed), nothing in the caselaw cited by the Court of Appeals would lead us to conclude the district court would have had jurisdiction to enter an order allowing a second appeal. Instead, the caselaw dealing with collateral decisions, such as those brought under K.S.A. 60-1507, makes the same distinction between cases where an appeal is never docketed, in which jurisdiction remains in the district court, and cases where a direct appeal has been dismissed by an appellate court, in which jurisdiction to allow additional proceedings related to a direct appeal rests with the appellate courts.

*Albright*, the case relied on by the Court of Appeals, and the line of cases discussed in *Albright*—including *State v. Patton*, 287 Kan. 200, 195 P.3d 753 (2008), and *Kargus v. State*, 284 Kan. 908, 169 P.3d 307 (2007)—provide examples of cases where a criminal defendant's direct appeal was not docketed and the defendant then filed an action under K.S.A. 60-1507, seeking the ability to bring an initial appeal. Under those circumstances, in *Albright*, this court readily concluded that "if counsel's performance

10

was deficient for *failure to file a timely appeal*, as a remedy a 60-1507 movant should be allowed to file an out-of-time appeal." (Emphasis added.) 292 Kan. at 207.

In contrast, in *Porter v. State*, 196 Kan. 732, 734, 414 P.2d 56 (1966), where a defendant filed a 60-1507 action after his direct appeal had been dismissed by this court for procedural reasons, this court held the appropriate remedy was for the defendant to file a motion with the appellate court seeking an order withdrawing this court's mandate. The *Porter* defendant had brought his appeal pro se after being convicted of armed robbery. He filed initial documents with this court that were sufficient under rules then in place to docket the appeal. But he did not file a brief, and this court eventually dismissed his appeal. He then filed a 60-1507 action asserting he had the right to effective assistance of counsel on appeal.

During the time between Porter's direct appeal and the filing of his 60-1507 action, the United States Supreme Court and this court had recognized an indigent criminal defendant's right to the assistance of counsel on appeal and determined that right should be applied retroactively. 196 Kan. at 733 (citing *Smith v. Crouse*, 378 U.S. 584, 84 S. Ct. 1929, 12 L. Ed. 2d 1039 [1964]; *Daegele v. Kansas*, 375 U.S. 1, 11 L. Ed. 2d 44, 84 S. Ct. 89, [1963]; *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 [1963]). After the United States Supreme Court's decisions, this court had issued an order that it transmitted to all district courts, advising:

> "'It is suggested that where the motion filed pursuant to Sec. 60-1507 apprises the District
> Court that he is an indigent person and no attorney was appointed to represent him in
> perfecting and presenting his criminal appeal, the District Court treat such proceeding as
> movant's affidavit for appointment of counsel pursuant to Rule No. 56 (191 Kan.
> Prefatory Rule No. 1(f) XII), and enter an order appointing counsel to represent the
> movant on appeal pursuant to said rule, and advise counsel to file a motion in the

11

Supreme Court to recall the mandate and reinstate the appeal for further proceedings.'"

*Porter*, 196 Kan. at 734 (quoting Rule No. 121, 194 Kan. XXVII [1964]).

Nevertheless, the district court in *Porter* determined that the order did not apply because the defendant had never requested the appointment of appellate counsel.

On appeal from that ruling, this court concluded the *Porter* defendant's failure to request the assistance of counsel could not be held against him when he had not been advised of his right to appointed counsel. This court then remanded the case to the district court with directions to appoint counsel "to assist defendant in making application for the reinstatement of the appeal in [his underlying criminal case] and for the recall of the mandate dismissing th[at] appeal." 196 Kan. at 735.

*Porter*'s outcome reinforces our conclusion that only the Court of Appeals can exert jurisdiction over Emerson's direct appeal, which had already been docketed and dismissed. It is up to the Court of Appeals to determine whether its mandate should be withdrawn and whether Emerson should be allowed to pursue that direct appeal. Arguably, the Court of Appeals made that determination when it considered the merits of Emerson's arguments, and, certainly, judicial economy would suggest we treat the Court of Appeals' action in that way and review its decision. But judicial economy cannot supply jurisdiction, and "if the trial court lacked jurisdiction," which it did in this case, "the appellate court likewise does not acquire jurisdiction over the subject matter of the appeal." *Sandlin*, 268 Kan. at 85.

## CONCLUSION

We hold that the district court did not have jurisdiction to permit Emerson to file a direct appeal out of time because he had already filed a timely appeal, the Court of

Appeals had obtained jurisdiction, and the Court of Appeals had dismissed the appeal and issued its mandate. Because the district court did not have jurisdiction, the Court of Appeals did not have jurisdiction to reach the merits of Emerson's appeal.

Appeal dismissed.