NOT DESIGNATED FOR PUBLICATION

No. 116,276

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.L.E.A.,
A Minor Child.


MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed June 16, 2017. Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant.

*Cheryl M. Pierce*, assistant county attorney, for appellee State of Kansas.

Before GARDNER, P.J., PIERRON, and ATCHESON, JJ.

*Per Curiam*:  A.A. appeals the decision of the Butler County District Court to terminate his rights as the father of A.L.E.A., his 10-year-old daughter, because of his extended incarceration and her pronounced emotional problems. We find sufficient evidence supports the district court's determination and reject A.A.'s additional challenge suggesting issue preclusion somehow barred the ruling. We, therefore, affirm the termination of A.A.'s parental rights.


FACTUAL AND PROCEDURAL HISTORY

A.A. was taken into federal custody on drug charges before A.L.E.A. was born. He was convicted on those charges and at the time of the final termination hearing in this case remained in prison serving his sentence. Raised by her mother, A.L.E.A. was

1

subjected to physical and sexual abuse while in her custody. The State filed a petition in October 2012 to have A.L.E.A. declared a child in need of care. The district court adjudged A.L.E.A. to be in need of care and placed her in temporary state custody. A.A. has been represented by court-appointed lawyers throughout this case and has participated in the hearings by telephone from the various federal prisons where he has been held. Mother has relinquished her parental rights and is not a party to this appeal.

The record evidence in the case shows A.L.E.A. has been diagnosed as having posttraumatic stress disorder and disruptive mood dysregulation disorder. The latter is a comparatively new psychological diagnosis applied when a child displays severe, chronic irritability and frequently reacts with explosive anger to situations that typically should prompt only mild or no emotional responses. Those episodes may include physically aggressive behavior, as they sometimes have with A.L.E.A. In short, A.L.E.A. manifests a fairly pronounced constellation of emotional issues making her difficult to manage in a family setting.

In February 2014, the State filed its first motion to terminate parental rights, alleging A.A. was unfit because of his extended incarceration and because he had been found unfit in another court proceeding involving a different child. After an evidentiary hearing, the district court ruled A.A. to be unfit and determined the unfitness was unlikely to change in the foreseeable future. But the district court found that terminating A.A.'s parental rights would not be in A.L.E.A.'s best interests and, therefore, denied the State's motion. The district court wanted the assigned case manager and the social service agency overseeing A.L.E.A.'s care to explore a permanent custodianship for A.L.E.A. with her paternal aunt.

About 21 months later, the State filed a second motion to terminate A.A.'s parental rights, alleging the same bases for unfitness. A.A. argued that collateral estoppel precluded the successive motion, since the district court had already declined to terminate

his rights. The State argued the factual circumstances had changed, so the new motion was not barred as repetitive. The district court rejected A.A.'s argument and held a new evidentiary hearing in January 2016.

The evidence showed that A.A. remained in federal custody and was not likely to be released from prison for at least a year. During the early part of his imprisonment, A.A. had some limited visits with A.L.E.A., when she came to the facility where he was being held and would see him several days in a row. Later, A.A. had regular telephone conversations with A.L.E.A. But those calls were stopped at the request of a foster placement who said A.L.E.A. tended to act out after talking with her father. The district court questioned the basis for and the wisdom of the decision cutting off communication between A.A. and A.L.E.A.

A.L.E.A. has been unsuccessfully placed with several foster families. Those placements failed largely because of A.L.E.A.'s emotional issues. A.L.E.A. also lived briefly with her aunt's family, and that didn't work out for essentially the same reason. For a time, the social service agency had A.L.E.A. in a series of what are typically considered short term, emergency residential placements. By the time of the second termination hearing, A.L.E.A. had been in an inpatient psychiatric placement for about 4 months but was scheduled to be moved to a less restrictive setting sometimes used with children unsuited for traditional foster placement. That was A.L.E.A.'s second inpatient stay for treatment of her psychological problems.

The therapist working with A.L.E.A. testified that she would ask about her father, wondered why she couldn't talk to him, and wanted to resume telephone calls with him. Other witnesses indicated that A.L.E.A. did not speak of A.A. The therapist said that finding a stable permanent placement for A.L.E.A. was essential to her mental health and that she would not improve and might well regress outside such an environment. He also

3

said anyone adopting or otherwise taking A.L.E.A. on a permanent basis would need to have training in dealing with children who had experienced significant trauma.

The case manager assigned to A.L.E.A. said no potential adoptive parents had been identified and agreed there was no guarantee A.L.E.A. would be adopted. The case manager testified that if A.A.'s parental rights were terminated, the social service agency could work through various "adoption recruiters" who would be able to search nationally for families willing and able to adopt children with special needs, thereby increasing the possibility for an adoptive placement.

The district court again found A.A. to be unfit and that the circumstances would not be likely to change in the foreseeable future. The district court relied on K.S.A. 2016 Supp. 38-2269(b)(5), making a parent's conviction of and incarceration for a felony grounds for unfitness, and on K.S.A. 2016 Supp. 38-2271(a)(1), permitting a district court to presume unfitness in a current proceeding based on a judicial finding of unfitness in an earlier proceeding. Given A.L.E.A.'s circumstances and the failure of the permanent guardianship, the district court found termination of A.A.'s parental rights to be in the child's best interests. The district court entered a termination order. A.A. has appealed.

LEGAL ANALYSIS

On appeal, A.A. challenges the sufficiency of the evidence to support the district court's finding of unfitness and its conclusion that termination was in A.L.E.A.'s best interests. A.A. also contends that collateral estoppel barred the State from filing a second motion to terminate his parental rights in light of the ruling on the first one. After setting forth key legal principles governing proceedings to terminate parental rights, we take up those points in order.

4

*Governing Legal Principles*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c). In addition, the State may rely on one or more of 13 statutory presumptions of unfitness outlined in K.S.A. 2016 Supp. 38-2271.

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against A.A.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g). As

5

directed by the language of K.S.A. 2016 Supp. 28-2269(g), the district court must accord "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

*Unfitness—Felony Conviction*

After a child is found to be in need of care, a parent must satisfy a reasonable plan for reintegration of the family. A reasonable plan includes a temporal component or deadline for completion to afford the child some permanent resolution of his or her situation. A parent's incarceration does not excuse his or her compliance with an otherwise reasonable reintegration plan. This panel recently outlined considerations in the termination of rights based on a parent's felony conviction and resulting imprisonment in *In re K.O.*, No. 116,704, 2017 WL 2403304, (Kan. App. 2017) (unpublished opinion). We borrow here accordingly:

> "This court has consistently recognized that incarceration typically does not delay or excuse completion of a reasonable reintegration plan. See *In re M.H.*, 50 Kan. App. 2d 1162, 1172, 337 P.3d 711 (2014); *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009); *In re M.D.S.*, 16 Kan. App. 2d 505, 509-10, 825 P.2d 1155 (1992). Nor does it necessarily stave off termination of parental rights. To the contrary, imprisonment for a felony is a specific statutory ground that may warrant a finding of unfitness. See K.S.A.

6

2016 Supp. 38-2269(b)(5). This court, however, has pointed out that, depending on the circumstances, imprisonment might not mandate termination. *In re M.H.*, 50 Kan. App. 2d at 1172; *In re M.D.S.*, 16 Kan. App. 2d at 510. For example, if the parent already had a well-established relationship with an older child, a district court properly could find that a comparatively short period of incarceration could mitigate noncompliance with some aspects of a reintegration plan or otherwise weigh against termination. See *In re M.H.*, 50 Kan. App. 2d at 1172. In that circumstance, the condition of unfitness—the parent's incarceration—reasonably could be viewed as likely to change in the foreseeable future." *In re K.O.*, 2017 WL 2403304, at *4.

In this case, the evidence showed A.A. had limited, though regular, contact with A.L.E.A. but never parented her or had a close familial relationship with her in any conventional sense. Although they communicated—mostly by telephone—A.A. hadn't forged a traditional parent-child relationship with A.L.E.A. because he had been in prison her entire life as of the second termination hearing. As the district court recognized, A.A. appears to sincerely care about A.L.E.A. and has tried to be as involved in her life as his incarceration permits. But that doesn't alter or mitigate the resulting circumstances and the absence of a substantial parent-child relationship between them.

To state the obvious, at the time of the second termination hearing, A.A. had been unable to provide a stable home environment for A.L.E.A. at any point in her life because of his continuing incarceration. Likewise, he had been unable to otherwise consistently support her financially or emotionally for the same reason. Accordingly, the evidence necessarily established by the required standard that A.A. was unfit, as provided in K.S.A. 2016 Supp. 38-2269(b)(5). The facts here undoubtedly illustrate a fairly typical situation the legislature meant to be deemed parental unfitness and, thus, illustrate why a felony conviction coupled with extended imprisonment represents a stand-alone ground for finding a parent unfit.

The district court similarly and correctly found the condition of unfitness was unlikely to change in the foreseeable future. In January 2016, A.A. likely would remain in federal prison for another year followed by release to a halfway house for up to 6 months. During that time, he would be unable to provide a home environment for A.L.E.A. In that transition period, A.A. would be expected to secure a place to live and a job. Even assuming he were able to do so, the hearing evidence strongly indicated he would be unable to successfully parent A.L.E.A. at that point. Because of her substantial emotional problems, A.L.E.A. has been unsuited for usual foster placements and was unsuccessful in the custodianship with her aunt. There was little reason to conclude A.A. would fare any better without additional training. And even then, he had no viable plan in place for securing suitable care for A.L.E.A. during his work hours. A single parent attempting to take on responsibility for a child such as A.L.E.A. would face a daunting set of tasks that simply could not be completed easily or quickly.

As the Revised Kansas Code for Care of Children, K.S.A. 2016 Supp. 38-2201 *et seq.*, recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward to a prompt, permanent disposition. K.S.A. 2016 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). Here, that factor takes on added significance. According to the hearing testimony, A.L.E.A. wasn't just in a holding pattern awaiting permanency—delay was having a deleterious impact on her already fragile emotional state.

The district court, therefore, correctly found that A.A.'s unfitness was unlikely to change in the foreseeable future, especially taking account of A.L.E.A.'s particular needs and the statutory requirement to consider "child-time" in measuring foreseeability. We

find no error in the district court's determinations with respect to A.A.'s conviction and incarceration.

*Unfitness—Statutory Presumption*

A.A. challenges the district court's reliance on the statutory presumption of unfitness in K.S.A. 2016 Supp. 38-2271(a)(1), based on a finding of unfitness in an earlier proceeding. A.A. submits the evidence didn't support the presumption here and the district court failed to analyze the evidentiary weight to be given the presumption as required in K.S.A. 60-414. We again draw on *In re K.O.*, where we discussed the presumptions of unfitness:

> "The presumptions permit a finding of unfitness based on the State's proof by clear and convincing evidence of specific predicate facts. See K.S.A. 2016 Supp. 38-2271(a). The parent, however, may rebut the presumption of unfitness by a preponderance of the evidence. K.S.A. 2016 Supp. 38-2271(b). The district court must consider K.S.A. 60-414, governing the effect of presumptions, in applying the 13 circumstances in K.S.A. 2016 Supp. 38-2271(a) that permit a presumptive determination of unfitness. See K.S.A. 2016 Supp. 38-2271(a) (proof of predicate fact establishes 'in the manner provided in K.S.A. 60-414' a presumption of unfitness). As provided in K.S.A. 60-414, if the predicate fact has no actual probative value in establishing the presumed fact and evidence has been introduced conflicting with the presumed fact, the presumption may no longer be given any evidentiary weight. Conversely, if the predicate fact is probative of the presumed fact, then the presumption remains in effect despite evidence disputing the presumed fact." *In the Interest of K.O.*, 2017 WL 2403304, at *3.

Here, the statutory presumption permits an inference of unfitness in the present case based on a finding of unfitness in an earlier case. We suppose that a person who has acted as an unfit parent in one situation with one child would be prone to act that way later in a similar situation with another child. In other words, we accept for purposes of argument that unfitness on one occasion would be circumstantial evidence having some

9

tendency to prove unfitness on another occasion. Therefore, had the district court applied K.S.A. 60-414 here, the presumption of unfitness in K.S.A. 2016 Supp. 38-2271(a)(1) would have remained intact. As a result, the district court's error in failing to filter the presumption of unfitness through K.S.A. 60-414 was harmless.

But the presumption of unfitness remained rebuttable. The parties stipulated to the admission of a journal entry in a Sedgwick County District Court case in 2001 terminating A.A.'s parental rights to another child because he had been found unfit. The assistant county attorney's characterization of the journal entry and her brief quote from it to that effect appear in the transcript of the first termination hearing. The journal entry itself is not part of the record on appeal, so we don't have any details set forth there.

A.A. testified, without contradiction, about the circumstances of the earlier adjudication of unfitness and did not dispute he had been found unfit. According to A.A., he was one of 12 putative fathers of the child in that case and never took a DNA test to determine his paternity. He did not recall having been represented by a lawyer in that case or participating in any hearings. There is no other substantive discussion of the Sedgwick County case.

On the whole, we find the record unilluminating about the Sedgwick County case beyond showing that the district court declared A.A. to be unfit and terminated his rights. From what we have in front of us, A.A.'s explanations would be consistent with a default finding against him. We assume without deciding that the evidence here amounts to a rebuttal of the presumption—a default wouldn't carry the same weight or evidentiary force as a factual finding on contested evidence. Given our assumption, we conclude the record fails to support a finding of unfitness based on the presumption in K.S.A. 2016 Supp. 38-2271(a)(1).

Ultimately, however, our conclusion does A.A. no practical good. As we have pointed out, a single ground supporting termination of parental rights is legally sufficient. And we have already found the district court properly relied on A.A.'s conviction and incarceration to terminate his parental rights. Whatever shortcomings there may be with the presumption of unfitness based on the Sedgwick County case, that ground merely provided an alternative or supplemental reason to terminate A.A.'s rights in this case. So our assessment does not require a reversal of the district court's termination order.

*Best Interests of the Child*

Having again found A.A. to be unfit following the second termination hearing, the district court revisited what would be in A.L.E.A.'s best interests. The district court appears to have correctly understood both the law and the record evidence on this point. The undisputed evidence showed A.L.E.A.'s psychological fabric continued to unravel because of the lack of permanency in her life—particularly the lack of a stable, nurturing home life with people both attuned to and trained in addressing her sometimes acute emotional needs. The undisputed evidence likewise showed that her opportunities for adoption into such a family increased markedly with the termination of A.A.'s parental rights.

As the district court acknowledged, A.L.E.A.'s circumstances were, in a word, tragic. And A.A. did nothing directly to bring them about, but, at the same time, he has been in no position to change them for the good. The components that go into termination of parental rights—the parent's unfitness and the child's best interests—ultimately are not fault-based determinations. That is, termination may be appropriate and necessary even if the parents truly love their children and have not acted deliberately or even negligently in bringing about the circumstances necessitating judicial intervention. See *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). This appears to be one of those cases.

11

In many cases, of course, parents have acted deliberately or with reckless indifference in ways that harm their children physically or emotionally, thereby legally establishing unfitness. See K.S.A. 2016 Supp. 38-2269(b)(2), (4). But a parent's infliction of harm, either intentionally or through gross negligence, is not legally necessary to prove either unfitness or that the best interests of the child would be served through termination.

Our review on this issue is for abuse of discretion. Absent legal mistakes or factual misunderstandings, of which we see none here, we review the best-interests determination by asking whether no reasonable judicial officer would take the same position as the district court. We readily answer that others would do so. We, therefore, find no abuse of discretion in the conclusion A.L.E.A.'s best interests were served by terminating A.A.'s parental rights.

*Collateral Estoppel*

A.A. argues the district court's denial of the State's first motion to terminate his parental rights interposed a collateral estoppel bar to its second motion, effectively precluding consideration of that motion. A.A.'s argument fails. Collateral estoppel operates as a preclusion doctrine across cases, preventing litigation of issues in one case if they have been decided in an earlier case involving the same parties or parties in legal privity. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 265-66, 261 P.3d 943 (2011); *National Inspection & Repair, Inc. v. Farah*, No. 102,281, 2016 WL 3570504, at *8 (Kan. App. 2016) (unpublished opinion) (Collateral estoppel "prevents relitigation in a different case of issues conclusively determined in a prior action."). The doctrine, however, does not apply to judicial decisions within a single case. See *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 737, 334 P.3d 830 (2014), *rev. denied* 302 Kan. 1008 (2015). Here, we are dealing with successive district court rulings

12

within one case; so collateral estoppel is inapplicable, and A.A.'s argument fails for that reason.

The related doctrine of law of the case, however, serves a similar function within a single legal action. 50 Kan. App. 2d at 737. Law of the case prevents a party from again litigating an issue in the district court after the issue has been raised and resolved in an appeal in that case. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1212, 308 P.3d 1238 (2013) ("The law of the case prevents relitigation of the same issues within successive stages of the same suit."); *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998) ("[O]nce an issue is decided by the [appellate] court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice."). A corollary recognizes that a party who fails to appeal an otherwise appealable order may not attack that ruling during later stages of the case. *State v. Finical*, 254 Kan. 529, 532, 867 P.2d 322 (1994) (recognizing longstanding Kansas precedent that "when an appealable order is not appealed it becomes the law of the case").

Even if we were to treat A.A.'s argument as one invoking law of the case, it would still fail. Recall that the district court found A.A. to be unfit in the first termination hearing but denied the State's motion based on A.L.E.A.'s best interests. The Revised Kansas Code for Care of Children explicitly delineates both a finding of unfitness and the termination of parental rights as interlocutory orders that may be immediately appealed. K.S.A. 2016 Supp. 38-2273(a) ("An appeal may be taken by any party . . . from any . . . finding of unfitness or termination of parental rights."). By the same token, however, a ruling *denying* a motion to terminate cannot be appealed. So the district court's denial of the State's first motion—as a nonappealable order—did not become law of the case and, therefore, could not bar consideration of the State's second motion to terminate.

13

Moreover, law of the case "is not an inexorable command" and yields to avoid clear error or manifest injustice. *Collier*, 263 Kan. 629, Syl. ¶¶ 2-3. Even if law of the case were applicable here (though we think otherwise), relevant circumstances had materially changed between the denial of the State's first motion to terminate and its filing of the second motion. Most obviously, the contemplated permanent conservatorship was tried, and it failed. In addition, as we have mentioned, the evidence indicated A.L.E.A.'s emotional condition would continue to deteriorate absent a stabilized permanency that A.A. could not provide because of his incarceration and probably would remain unable to provide long after his release. Those are sufficiently significant factual developments to undercut an arguable application of law of the case.

A.A. relies on *In re A.S.*, 12 Kan. App. 2d 594, 598-602, 752 P.2d 705 (1988), in which the court acknowledged that preclusion doctrines may be applied to successive efforts by the State to terminate parental rights. But the case doesn't provide nearly the support A.A. suggests. The court refers to res judicata and collateral estoppel but never really differentiates those doctrines nor even alludes to law of the case. See *State v. Copper*, No. 113,902, 2016 WL 4414612, at *10 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., concurring) (term "res judicata" may encompass claim and issue preclusion principles generally, although it typically refers to claim preclusion). The decision in *In re A.S.* appears to involve law of the case and successive motions to terminate parental rights to a particular child in a single action. In any event, however, the court held that changed circumstances would prevent an unyielding application of preclusion doctrines to bar a second motion to terminate. 12 Kan. App. 2d at 601-02. The court then affirmed the district court's decision to terminate parental rights on the State's second motion, filed about 2 years after it had denied the first motion in the same case. The rule and result in *In re A.S.* are, therefore, fully consistent with our determination.

To sum up, then, we find no legal grounds for imposing a preclusion bar to the State's second motion to terminate A.A.'s parental rights.

14

*Conclusion*

We have carefully examined the record and the law in light of the arguments A.A. has advanced on appeal. As did the district court, we entertain no doubt about the sincerity of A.A.'s stated desire to be a good father to A.L.E.A. But sincerity and desire do not supplant the legal tests for unfitness, timely correction of unfitness, and best interests of the child in termination proceedings. Measured by those legal tests, the district court rendered an appropriate determination in terminating A.A.'s parental rights.

Affirmed.