(825 P.2d 1155)

No. 65,436

## In the Interest of M.D.S.

Opinion filed February 14, 1992.

*Gary P. Kessler*, of Kansas City, for appellant.

*Terra D. Morehead*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before GERNON, P.J., REES, J., and CARL B. ANDERSON, JR., District Judge, assigned.

GERNON, J.: Steven Smith appeals from the trial court's ruling which terminated his parental rights with regard to M.D.S. Smith argues the trial court erred in concluding that there was clear and convincing evidence of his unfitness as a parent. More pre-

cisely, Smith argues that his incarceration prevented him from complying with and completing some or all of the parts of a reintegration plan and that his incarceration should not be used as a factor in determining whether he was unfit.

We disagree with Smith's assertion and affirm the trial court's termination of his parental rights.

M.D.S. was first found to be a child in need of care in October of 1986. At the time of that finding, M.D.S. was two years old. In March of 1987, a reintegration plan was presented and ordered by the court, which included Smith having an evaluation, developing stable income and housing, and providing the court with a child care plan and a budget. In January of 1988, the custody of M.D.S. was given to the Kansas Department of Social and Rehabilitation Services (SRS), under an order of protective custody.

In October of 1989, an expanded reintegration plan containing the prior order was filed. In addition, the court ordered that Smith obtain sexual abuse therapy and that he have no contact with any of his children without prior approval. Finally, in February of 1990, SRS filed a motion to terminate the parental rights of Smith, which was heard in May of 1990.

The journal entry terminating parental rights contains the following:

"(4) That Mona Smith and Steven Smith have each failed to comply with the Court orders that were designed to effect rehabilitation and reintegration of the child into the parental home; therefore, reasonable efforts by appropriate public or private child caring agencies have been unable to rehabilitate the family (K.S.A. 38-1583(b)(7)); Mona Smith and Steven Smith have each demonstrated a lack of effort to adjust his/her circumstances, conduct or conditions to meet the needs of the child (K.S.A. 38-1583(b)(8)); and Mona Smith and Steven Smith have each failed to carry out a reasonable plan approved by the Court directed toward the integration of the child into the parental home (K.S.A. 38-1583(c)(3)).

"(5) That Mona Smith and Steven Smith have each failed to maintain contact with [M.D.S.'s] therapist, the SRS caseworker, and the Court Services Officer; furthermore, Mona Smith and Steven Smith have each failed to maintain regular visitation or contact with [M.D.S.]; therefore, Mona Smith and Steven Smith have each physically, mentally or emotionally neglected [M.D.S.] (K.S.A. 38-1583(b)(4)) and each has failed to maintain regular visitation, contact or communication with [M.D.S.] or with her custodian (K.S.A. 38-1583(c)(2)).

"(6) That, therefore, Mona Smith and Steven Smith are each an unfit parent by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future (K.S.A. 38-1583(a))."

## Sufficiency of the Evidence

Smith argues the trial court erred by concluding that there was clear and convincing evidence of his unfitness as a parent and, therefore, that termination was appropriate under the facts presented to the trial court. K.S.A. 1991 Supp. 38-1583 contains criteria for determining whether parental rights should be terminated and provides in part:

"(a) When the child has been adjudicated to be a child in need of care, the court may terminate parental rights when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future.

"(b) In making a determination hereunder the court shall consider, but is not limited to, the following, if applicable:

. . .

"(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

. . .

"(4) physical, mental or emotional neglect of the child;

"(5) conviction of a felony and imprisonment;

. . .

"(7) reasonable efforts by appropriate public or private child caring agencies have been unable to rehabilitate the family; and

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child.

"(c) In addition to the foregoing, when a child is not in the physical custody of a parent, the court, in proceedings concerning the termination of parental rights, shall also consider, but is not limited to the following:

. . .

"(2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;

"(3) failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home; . . .

. . .

"In making the above determination, the court may disregard incidental visitations, contacts, communications or contributions.

. . .

"(e) The existence of any one of the above standing alone may, but does not necessarily, establish grounds for termination of parental rights. The determination shall be based on an evaluation of all factors which are ap-

plicable. In considering any of the above factors for terminating the rights of a parent, the court shall give primary consideration to the physical, mental or emotional condition and needs of the child."

The Kansas Supreme Court recently discussed the appropriate standard of appellate review for termination cases in *In re S.M.Q.*, 247 Kan. 231, 796 P.2d 543 (1990).

*"The same standard of appellate review that is applicable for termination of parental rights in an adoption proceeding is applicable in this case.* To terminate parental rights in an adoption proceeding, the duty of an appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the trial court's findings. An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. It must review the evidence in the light most favorable to the party prevailing below. [Citations omitted.]" 247 Kan. at 234. (Emphasis added.)
"The applicable scope of review for the appellate courts in a termination of parental rights case is not whether the record contains substantial competent evidence of a clear and convincing nature but whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that parental rights should be terminated." 247 Kan. at 240.

At the time of the termination hearing, Smith had five months yet to run on a one-year sentence in the Wyandotte County jail, having pled guilty to a charge of having sexually abused two of his male children. In addition, prior to January of 1989, Smith had served a sentence in prison for convictions of theft and robbery. After his release, sometime between January and July of 1989, Smith spent approximately two months residing in a halfway house. Shortly thereafter, his parole from a Missouri conviction was revoked, although he indicated at the termination hearing that he would not be required to serve any additional time on the Missouri sentence when he was released from the Wyandotte County jail.

"The district court must find the parent unfit before parental rights may be severed. [Citation omitted.]" *In re J.G.*, 12 Kan. App. 2d 44, 51, 734 P.2d 1195, *rev. denied* 241 Kan. 838 (1987). The Kansas Supreme Court recently noted: "The term 'unfit' is defined to include '[i]nherent mental and emotional incapacity to perform parental obligations [which] can constitute such breach of parental duty as to make the parents unfit to be entrusted with custody of their child.' " *In re S.M.Q.*, 247 Kan. at 233

(quoting *In re Penn*, 2 Kan. App. 2d 623, 625, 585 P.2d 1072 [1978]).

Smith argues that his inability to complete his reintegration of the family and his inability to rehabilitate the family was due to his incarceration. He testified that his incarceration was the only factor preventing him from complying with the trial court's order and stated that he would comply with the orders upon his release. Therefore, the crucial question for us is what effect, if any, does a parent's incarceration have upon the trial court's consideration of the factors contained in K.S.A. 1991 Supp. 38-1583?

Although no published decisions have directly addressed this issue, we can take guidance from the Kansas Supreme Court's recent pronouncements in *In re Adoption of F.A.R.*, 242 Kan. 231, 747 P.2d 145 (1987).

The Kansas Supreme Court has considered the effect of a parent's incarceration upon proceedings to permit adoption without the parents' consent under K.S.A. 59-2102. In *F.A.R.*, the court concluded "it was not error for the trial court to take into consideration the limiting aspects of appellee's confinement in determining whether he had failed to assume his parental duties." 242 Kan. at 236-37. In reaching this conclusion, the court reasoned:

"In considering whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances must be considered. When a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. It is obvious that a parent imprisoned for a long term cannot provide the customary parental care and guidance ordinarily required. If an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts." 242 Kan. at 236.

This court, in *In re J.L.D.*, 14 Kan. App. 2d 487, 491, 794 P.2d 319, *rev. denied* 247 Kan. 704 (1990), concluded that a termination hearing may proceed without the presence of a parent incarcerated in another state. We reasoned that the absence of the incarcerated parent did not violate due process where the parent was represented by counsel and the incarcerating juris-

diction refused to release the parent for the hearing. 14 Kan. App. 2d· at 488-91. Concerning incarcerated parents, we stated:

"The father was serving an extended term in prison and would not be available to render proper care for the child within the foreseeable future.

"Loss of parental rights is extremely important, but it should be weighed against the loss by the child of the right to a prompt judicial determination of his status. A prisoner serving a lengthy prison term should not be able to use his due process rights to foreclose permanently any severance proceedings." 14 Kan. App. 2d at 491.

Here, Smith asks us to consider his incarceration to be a mitigating factor which frustrated his ability to comply with a reintegration plan and, therefore, should not be used as a basis for termination.

Under the facts presented here, we reject Smith's position for the following reasons: (1) The statutory scheme indicates imprisonment for a felony alone can justify termination of parental rights [K.S.A. 1991 Supp. 38-1583(b)(5)]; (2) a lengthy incarceration would make any substantial contact with a child, or the development of a relationship, very unlikely; (3) M.D.S., at the time of the termination hearing, was six years old, and for four of those six years the State had legal custody of her; (4) a termination proceeding involves a child's best interests and parental fitness; and (5) a child's best interests would not be served by requiring a delay in the proceedings whenever a parent is incarcerated.

We do recognize that, under some fact situations, incarceration should be considered as a mitigating factor for the following reasons: (1) Imprisonment does not require an automatic termination under the statute, although the anticipated duration of the incarceration may affect whether termination is justified under K.S.A. 1991 Supp. 38-1583(b)(5); (2) any holding that incarceration cannot be a mitigating factor would effectively render termination an automatic result of any lengthy incarceration, and perhaps any incarceration at all; and (3) the termination of parental rights involves fundamental constitutional rights, and a parent has a fundamental liberty interest in maintaining a familial relationship with his or her child. *J.L.D.*, 14 Kan. App. 2d at 490.

Here, the trial court recognized that Smith's incarceration on three separate occasions during the pendency of the proceeding, including a term in the penitentiary for robbery and theft, a

violation of a Missouri parole, and a one-year term after a guilty plea to two counts of sexual battery, suggested a failure to adjust his conduct to his children's needs. The trial court noted that Smith has basically not had any contact with M.D.S. in four years, due largely to his incarceration. The record supports the trial court's findings that "there is absolutely no bonding between [M.D.S.] and you [Smith]."

Given the record before us, we conclude that Smith's incarceration was considered by the court to be a negative factor and that the trial court did not err in rejecting Smith's assertion that the incarceration should be considered a mitigating factor in his failure to comply with court orders concerning reintegration and his failure to properly conduct himself as a parent for M.D.S.

Affirmed.