NOT DESIGNATED FOR PUBLICATION

No. 116,704

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.O.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Allen District Court; DANIEL D. CREITZ, judge. Opinion filed June 2, 2017.
Affirmed.

*Melissa R. Dugan*, of Kluin Law Office, LLC, of Chanute, for appellant natural father.

*Charles H. Apt III*, of Apt Law Offices, LLC, of Iola, for appellee guardian ad litem.

*Jerry B. Hathaway*, county attorney, for appellee.

*Bret A. Heim*, of Immel & Heim, P.A., of Iola, for appellee natural mother.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*:  C.O. appeals the Allen County District Court's termination of his parental rights as the father of K.O., a son he had never met because the child was born after he went to prison and with whom he communicated only once in 4 years. In addition to the lack of any meaningful contact with K.O., C.O. failed to make substantial progress toward fulfilling a reasonable reintegration plan—a failure he improperly says should be excused because of his incarceration. Those are sufficient legal grounds for termination. We, therefore, find no reversible error and affirm the district court's decision terminating C.O.'s rights.

1

K.O. was born in early 2013 with methamphetamine in his system, the result of his mother's drug abuse during the pregnancy. C.O. and B.W., K.O.'s mother, were not married, and C.O. wasn't present for the birth. By then, C.O. had been convicted of being a felon in possession of a firearm and was an inmate in the Kansas prison system. The evidence in the termination proceeding showed that C.O. could be released no earlier than December 2016. The appellate record contains no more recent information about his custodial status.

K.O. was removed from B.W.'s custody 3 weeks after his birth and has remained in out-of-home placements throughout this case. The district court formally adjudicated K.O. a child in need of care on May 13, 2013. A reintegration plan was put in place for C.O. in June 2013. Early in the process, C.O. seemed to have fairly regular communication with the assigned case manager. Later, however, his contact became irregular, especially with the case manager who replaced the first one. Although C.O. never disputed he was K.O.'s father, he took a DNA test in early 2015 that confirmed his paternity.

The permanency plan for K.O. changed from reintegration to adoption in late 2015 around the time B.W. voluntarily relinquished her parental rights as to K.O. The assigned caseworker communicated with C.O. about family members who might be able to adopt K.O. C.O. identified only his mother as a possible candidate, but she failed a background check.

On December 1, 2015, the State filed a motion to terminate C.O.'s parental rights. A district magistrate judge held a termination hearing a week later at which C.O. appeared in person, though still in custody, along with his appointed lawyer. C.O. and the

two case managers testified. The magistrate judge entered a brief order the same day granting the State's motion. C.O. appealed that ruling to the district court. The district court held a termination hearing on May 6, 2016, at which C.O. again appeared in person with his lawyer. With the consent of the parties, the district court took judicial notice of the file in this case, including the transcript of the initial termination hearing. The district court heard additional testimony from the current case manager. Following the hearing, the district court entered an order terminating C.O.'s parental rights as to K.O.

C.O. has appealed that ruling. We discuss in more detail the specific grounds for the termination in addressing the issues C.O. has raised on appeal.

ANALYSIS

*Governing Legal Principles*

We begin with some general principles governing proceedings under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 *et seq.* A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in

3

combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c). In addition, the State may rely on one or more of 13 statutory presumptions of unfitness outlined in K.S.A. 2016 Supp. 38-2271.

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against C.O.

Having found unfitness, the district court must then determine whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g). The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

C.O. first challenges the district court's reliance on two statutory presumptions of unfitness. The presumptions permit a finding of unfitness based on the State's proof by clear and convincing evidence of specific predicate facts. See K.S.A. 2016 Supp. 38-2271(a). The parent, however, may rebut the presumption of unfitness by a preponderance of the evidence. K.S.A. 2016 Supp. 38-2271(b). The district court must consider K.S.A. 60-414, governing the effect of presumptions, in applying the 13 circumstances in K.S.A. 2016 Supp. 38-2271(a) that permit a presumptive determination of unfitness. See K.S.A. 2016 Supp. 38-2271(a) (proof of predicate fact establishes "in the manner provided in K.S.A. 60-414" a presumption of unfitness). As provided in K.S.A. 60-414, if the predicate fact has no actual probative value in establishing the presumed fact and evidence has been introduced conflicting with the presumed fact, the presumption may no longer be given any evidentiary weight. Conversely, if the predicate fact is probative of the presumed fact, then the presumption remains in effect despite evidence disputing the presumed fact.[*]

[*]A couple of hypothetical examples illustrates how K.S.A. 60-414 operates. Suppose a statute provides that a driver under 18 years of age involved in a motor vehicle mishap is presumed to be at fault. A 17-year-old driver goes off the road, crashes through a fence, and kills a rancher's prize-winning bull. The driver suffers a concussion and can't recall how the mishap occurred. The presumption would impute fault in that situation. But let's say the driver recalls what happened and claims he swerved to avoid hitting a child riding a bicycle. Even though nothing else corroborates that account, the presumption drops out of the picture because the young age of a driver has no independent probative value in proving fault or negligence, especially on a particular occasion. Suppose, instead, a statute provides that a legally intoxicated driver is presumed to be at fault. Under the same factual scenarios involving a drunk 30-year-old driver, the presumption would remain in effect because legal intoxication would be relevant to showing a driver to be at fault or negligent. The presumption, however, still could be overcome if the factfinder ultimately believed the driver's version—say an independent witness corroborated that the bicyclist suddenly darted into the road from a driveway obscured by a hedge.

Here, the district court relied on two statutory presumptions of unfitness in terminating C.O.'s parental rights. The first presumes unfitness when a child has been removed from the home for 2 years or more and the parent has failed to "carry out" a reasonable reintegration plan and probably won't "in the near future." K.S.A. 2016 Supp. 38-2271(a)(6). The second presumes unfitness when a parent fails or refuses "to assume the duties of a parent" for the 2 years before the filing of the petition—the presumption treats "incidental" communications with or financial support of the child as insufficient to meet those duties. K.S.A. 2016 Supp. 38-2271(a)(13). C.O. contends the district court committed reversible error because it failed to consider and apply K.S.A. 60-414 to the two presumptions before relying on them. We disagree with C.O.'s ultimate conclusion that the omission requires reversal of the district court's order of termination.

A district court errs in not filtering a presumption of unfitness outlined in K.S.A. 2016 Supp. 38-2271 through the evidentiary lens of K.S.A. 60-414. *In re K.R.*, 43 Kan. App. 2d 891, 899, 233 P.3d 746 (2010). But the error may be harmless in any given case. The issue essentially presents a question of law in that the application of K.S.A. 60-414 to a particular presumption rests on the statutory language of the presumption and whether the predicate fact as described in the statute actually tends to prove the resulting presumed fact, again, as described in the statute. The actual facts of the case at hand do not bear on that determination. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015) (interpretation of statute presents question of law over which appellate court exercises unlimited review). We, therefore, can make that legal determination even though the district court did not.

The State and the others filing briefs as appellees (K.O.'s guardian ad litem and B.W., through her lawyer) suggest C.O. procedurally defaulted the issue because he did not call the district court's attention to its failure to apply K.S.A. 60-414. The argument for lack of preservation isn't as clear cut as the appellees suggest, so we defer ruling on it and advance to the merits.

The presumptions invoked here operate similarly by presuming unfitness from a limited parental involvement with the child over an extended time. The presumption in K.S.A. 2016 Supp. 38-2271(a)(6) relies on the child having been removed from the household for at least 2 years coupled with the parent's inability to satisfy reasonable conditions for reintegration. The presumption in K.S.A. 2016 Supp. 38-2271(a)(13) relies on the parent's failure to act as a parent to the child for at least 2 years. We needn't belabor the forensic exercise. The predicate facts underlying the presumptions would be relevant in determining parental unfitness—an inability to take the steps necessary to secure the child's return to the home or the extended lack of meaningful contact with the child at all. So the presumption would remain in effect, as provided in K.S.A. 60-414, in the face of evidence suggesting a parent to be fit. The district court did not apply the presumptions in some other way, so the failure to explicitly consider K.S.A. 60-414 amount to a harmless error.

The presumptions established in K.S.A. 2016 Supp. 38-2271 are rebuttable. Here, however, C.O. did not come forward with evidence to successfully overcome them.

As to K.S.A. 2016 Supp. 38-2271(a)(6), the evidence showed that K.O. had been removed from the home for more than 2 years and C.O. had not met all of the requirements of a reasonable reintegration plan and probably would not be able to do so in the near future, since he would continue to be incarcerated.

C.O. contends he should have been granted some form of dispensation in complying with an otherwise reasonable reintegration plan because he was in prison throughout the pendency of this case in the district court. Basically, C.O. divines a categorical rule that would grant inmates some period of time after their release to complete reintegration plans, particularly with respect to components like maintaining suitable housing for their children that would be wholly impractical or impossible in

7

prison. But the law is otherwise. This court has consistently recognized that incarceration typically does not delay or excuse completion of a reasonable reintegration plan. See *In re M.H.*, 50 Kan. App. 2d 1162, 1172, 337 P.3d 711 (2014); *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009); *In re M.D.S.*, 16 Kan. App. 2d 505, 509-10, 825 P.2d 1155 (1992). Nor does it necessarily stave off termination of parental rights. To the contrary, imprisonment for a felony is a specific statutory ground that may warrant a finding of unfitness. See K.S.A. 2016 Supp. 38-2269(b)(5). This court, however, has pointed out that, depending on the circumstances, imprisonment might not mandate termination. *In re M.H.*, 50 Kan. App. 2d at 1172; *In re M.D.S.*, 16 Kan. App. 2d at 510. For example, if the parent already had a well-established relationship with an older child, a district court properly could find that a comparatively short period of incarceration could mitigate noncompliance with some aspects of a reintegration plan or otherwise weigh against termination. See *In re M.H.*, 50 Kan. App. 2d at 1172. In that circumstance, the condition of unfitness—the parent's incarceration—reasonably could be viewed as likely to change in the foreseeable future.

Here, however, the circumstances fall heavily against C.O. He obviously had no relationship with K.O. before going to prison—in that respect, "reintegration," though a term of art, was actually a misnomer. There simply was no familial relationship between C.O. and K.O. to reintegrate. C.O. did nothing to seek out or cultivate any sort of relationship with K.O.

The record showed C.O. sent a single letter to K.O. between the child's birth and the termination hearing. And the evidence showed that C.O. would remain in prison for at least another 8 months when the district court ordered termination of his parental rights. By then, K.O. would have been nearly 4 years old. Nothing suggests C.O. would have been able to promptly satisfy significant parts of the reintegration plan, such as providing suitable housing or maintaining sufficiently gainful employment to support his son. So as a practical matter, reintegration even then would have been a continuing process without

8

a fixed target for C.O. assuming physical custody of K.O. in what would be considered an integrated family structure.

As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward to a prompt, permanent disposition. K.S.A. 2016 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). In short, C.O. would not have been able to satisfy a reintegration plan in the near future. The district court, therefore, properly relied on the presumption in K.S.A. 2016 Supp. 38-2271(a)(6) to support a finding of unfitness.

In addition to the presumed unfitness, the district court must also find the parent will not become fit and able to care for the child in the foreseeable future to warrant termination. K.S.A. 2016 Supp. 38-2271(b). Here, the evidence satisfied the temporal requirement, as well. C.O. would not realistically be able to form a viable parental relationship and integrated familial unit within a foreseeable period, especially measured by the required "child-time" standard applicable to K.O.

What we have already outlined also supports the district court's reliance on the presumption in K.S.A. 2016 Supp. 38-2271(a)(13). C.O. had no meaningful communication or contact with K.O. in the 2 years before the petition was filed in this case. That establishes presumptive unfitness, and C.O. has offered nothing to rebut the presumption. C.O.'s course of conduct (or more aptly, his lack of conduct) on this score supported a conclusion that he would not initiate material efforts to act in some meaningful way as K.O.'s parent in the foreseeable future—at least throughout his continued imprisonment.

9

*Statutory Grounds for Unfitness under K.S.A. 2016 Supp. 38-2269*

In addition to the presumptions, the State argued that C.O. was unfit based on several factors listed in K.S.A. 2016 Supp. 38-2269. The magistrate judge and the district court relied on each of those in determining unfitness and essentially adopted the State's position supporting them. We look at each of the grounds in turn.

• Physical, mental, or emotional neglect of the child, as provided in K.S.A. 2016 Supp. 38-2269(b)(4). C.O.'s lack of contact or communication with K.O. over the course of the child's life fairly may be considered emotional neglect. There certainly was no parent-child bond or relationship between the two. The evidence on this point satisfied the requisite standard. C.O. was unfit for that reason. As we have already indicated, the evidence supported a conclusion the condition would not likely change in the foreseeable future, as required by K.S.A. 2016 Supp. 38-2269(a).

• Reasonable efforts by appropriate public or private child caring agencies have been unable to rehabilitate the family, as provided in K.S.A. 2016 Supp. 38-2269(b)(7). The case managers put together a reintegration plan for C.O. He was initially attentive to the plan and to contacting the case manager but later appeared to be neglectful of the tasks and of regular communication about his progress. As we have indicated, C.O. could not satisfy the most important components of the plan—securing suitable housing and gainful employment—while he was in prison. That stymied reintegration through no omission by or fault of the social service agency and the case managers. B.W. obviously was unavailable as a placement for K.O. during C.O.'s imprisonment, and C.O. identified no suitable alternative candidate.

In applying the statutory presumptions of unfitness, we have rejected C.O.'s argument that his compliance with the reintegration plan should be measured under a

relaxed standard because of his incarceration. The argument is equally unavailing in rebutting this ground for unfitness in K.S.A. 2016 Supp. 38-2269(b)(7). The evidence supported the finding of unfitness based on the failure of reasonable efforts to reintegrate the family. C.O.'s continued incarceration supported a finding that the condition would not likely change in the required time.

• A lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child, as provided in K.S.A. 2016 Supp. 38-2269(b)(8). For purposes of this case, the evidence on this factor may be viewed as parallel to that for emotional neglect. C.O. has not made any effort to develop a meaningful relationship with K.O., which displays a failure to adjust to meet the child's needs. Despite his incarceration, C.O. could have had greater contact with K.O. and chose not to do so. The evidence, therefore, supports this factor.

• Failure to assure care of the child in the parental home when able to do so, as provided in K.S.A. 2016 Supp. 38-2269(c)(1). Given the other circumstances of this case, we do not linger over this factor. We suppose for the sake of argument that C.O. was unable to provide care in a parental home at least in part because of his incarceration and, therefore, could not have failed to do so. This makes no difference to the outcome of the case, since a single statutory basis for unfitness may be sufficient to terminate parental rights. Here there are multiple statutory bases warranting termination, even if this one may not.

• Failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home, as provided in K.S.A. 2016 Supp. 38-2269(c)(3). The reintegration plan here reasonably required C.O. to establish a parental home. He could not do so during his incarceration and, therefore, failed to carry out that aspect of the plan. C.O.'s inability would continue as long as his imprisonment did and

11

probably for some time after his release. There was no existing parental home because B.W. was unfit.

Without repeating what we have already discussed, C.O.'s incarceration did not absolve him of the obligation to be a fit parent or to become one in a reasonably foreseeable time. Given K.O.'s age and the lack of a preexisting parental relationship, C.O. was unfit in this respect, and the condition was not likely to change in the foreseeable future.

• Failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay, as provided in K.S.A. 2016 Supp. 38-2269(c)(4). On appeal, C.O. represented that no evidence was introduced at the termination hearing on this ground. None of the interested parties filing responsive briefs have refuted that assertion or identified where in the record the evidence might be found. We, therefore, assume this ground to have been factually unsupported and discount it.

We also mention that the State did not rely on K.S.A. 2016 Supp. 38-2269(b)(5), recognizing a felony conviction and incarceration to be a ground supporting unfitness, in its motion to terminate filed in the district court. The State has cited that ground on appeal. We decline to consider it here for the first time.

Having surveyed the grounds asserted for unfitness and the record evidence, we find ample bases supporting the district court's determination. The evidence would permit a reasonable factfinder to conclude by clear and convincing evidence that C.O. was unfit to parent K.O. at the time of the termination hearing and the various conditions would be unlikely to change in the foreseeable future. The statutory presumptions in K.S.A. 2016 Supp. 38-2271(a)(6) and (a)(13) singly or in combination are sufficient. Likewise, the grounds for unfitness enumerated in K.S.A. 2016 Supp. 38-2269(b)(4), (b)(7), (b)(8) and (c)(3) collectively, if not individually, more than satisfy the requirements for termination.

12

*Determination of Child's Best Interests*

The remaining issue is whether K.O.'s best interests were served by terminating C.O.'s parental rights. Here, the district court appears to have generally understood the facts and to have applied the correct legal framework. Our remaining task is to ask whether the district court would stand alone in concluding the facts call for termination under that framework. We comfortably conclude that would not be true.

C.O. had no relationship with K.O. and developed none through the child's first 4 years. As a result of his imprisonment, C.O. could not provide a suitable home environment for K.O. and would be unable to do so in the foreseeable future. K.O. was entitled to permanency and an immediate opportunity for adoption without the delay waiting on C.O. would generate. Those considerations necessarily would lead a district court to reasonably conclude terminating C.O.'s parental rights would be in K.O.'s best interests. The district court, then, could not have abused its discretion in coming to that conclusion.

*Conclusion*

We have thoroughly reviewed the record and have carefully considered the arguments of C.O. on appeal. Having done so, we find no legal basis to upset the district court's order terminating C.O.'s parental rights to K.O.

Affirmed.