NOT DESIGNATED FOR PUBLICATION

Nos. 117,665
117,666
117,667
117,668
117,669
117,670

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of G.P., R.P., R.P., H.P., T.P., and R.P.,
Minor Children.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed October 6, 2017.
Affirmed.

*Robert D. Campbell*, of Campbell Law Office, P.A., of Atchison, for appellant natural father.

*Patrick E. Henderson*, assistant county attorney, for appellee.

*Rex L. Lane*, of Lane Law Office LLC, of Atchison, guardian ad litem.

Before STANDRIDGE, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM:  The Atchison County District Court terminated the right of C.P. to parent his six sons largely based on his criminal convictions for raping his stepdaughter (and their half-sister)—for which he is now serving about 25 years in prison. C.P. has appealed and principally argues the district court's decision was not in the best interests of his children. We find no error in the district court's ruling and affirm.

1

The family came to the attention of State investigators in August 2014 when they received a report that G.P., the eldest of C.P.'s sons, may have been physically abused. G.P, then 10 years old, had a large bruise on his arm and eventually told investigators that his father had grabbed him. He said C.P. often harshly punished him and his siblings. G.P.'s brothers—Ro.P., Ri.P., H.P., T.P., and Ra.P.—ranged in age from 8 years old to less than a month old. Also living in the home were their half-sister E.B., who was 14 years old, and R.P., the mother of all of the children.

The older children also reported that their home was dirty and infested with mice and insects. Investigators observed bites on the children's arms and legs. A home inspection confirmed the unhygienic conditions the children described. Based on that information, the county attorney filed separate petitions for each child asking the district court to find them in need of care. R.P. and C.P. did not contest the child in need of care (CINC) determination. The district court removed the children from the home and temporarily placed them in the custody of the State. An assigned caseworker prepared a family reintegration plan requiring R.P. and C.P. to participate in programs aimed at improving their parenting skills. The district court handled the CINC cases jointly. With the exception of E.B.'s case, they have been consolidated for appeal. We have that consolidated appeal before us.

During the CINC proceedings, investigators received information that C.P. had been sexually abusing E.B. As a result, in January 2015, the county attorney filed six felony charges against C.P. in district court. In an agreed disposition with the county attorney, C.P. pleaded no contest to two counts of rape in September, and the district court later sentenced him to a controlling term of 310 months in prison.

2

Meanwhile in the CINC cases, the county attorney filed motions to terminate the parental rights of C.P. and R.P. The district court heard evidence in January 2017. C.P. was transported from prison for the hearing and was present with his court-appointed lawyer. The county attorney's evidence focused primarily on R.P.'s fitness. At the hearing, the district court properly took judicial notice of C.P.'s convictions for rape. Pertinent here, the evidence showed that C.P. had only limited contact with his children after they were removed from the home as being in need of care and before he was taken into custody on the criminal charges. Following his incarceration, C.P. had no communication with his children. C.P. neither testified at the termination hearing nor offered countervailing evidence.

In a written decision, the district court found C.P. to be an unfit parent, the unfitness was unlikely to change in the foreseeable future, and the best interests of the children would be served by terminating C.P.'s parental rights. The district court did not terminate R.P.'s parental rights, finding she had made sufficiently significant progress that the children had been reintegrated into the home, albeit with continuing State supervision. In a posttrial brief to the district court, the county attorney apparently conceded the evidence failed to establish R.P.'s continuing unfitness.

C.P. has appealed the termination of his parental rights, arguing the insufficiency of the evidence against him.

LEGAL ANALYSIS

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and

3

child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against C.P.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g)(1). As directed by the language of K.S.A. 2016 Supp. 38-2269(g)(1), the district court gives "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual

4

representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Here, the district court found C.P. to be unfit based on three statutory grounds: (1) conduct toward a child of a physically, emotionally, or sexually cruel or abusive nature, as provided in K.S.A. 2016 Supp. 38-2269(b)(2); (2) conviction of a felony and imprisonment, as provided in K.S.A. 2016 Supp. 38-2269(b)(5); and (3) following removal of the children from the home, failure to maintain regular visitation, contact, or communication with them, as provided in K.S.A. 2016 Supp. 38-2269(c)(2). In its written ruling, the district court zeroed in on C.P.'s rape convictions.

This court recently outlined considerations applicable to the termination of rights based on a parent's felony conviction and resulting imprisonment in *In re K.O.*, No. 116,704, 2017 WL 2403304 (Kan. App. 2017) (unpublished opinion). We borrow here accordingly:

> "This court has consistently recognized that incarceration typically does not delay or excuse completion of a reasonable reintegration plan. See *In re M.H.*, 50 Kan. App. 2d 1162, 1172, 337 P.3d 711 (2014); *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009); *In re M.D.S.*, 16 Kan. App. 2d 505, 509-10, 825 P.2d 1155 (1992). Nor does it necessarily stave off termination of parental rights. To the contrary, imprisonment for a felony is a specific statutory ground that may warrant a finding of unfitness. See K.S.A. 2016 Supp. 38-2269(b)(5). This court, however, has pointed out that, depending on the circumstances, imprisonment might not mandate termination. *In re M.H.*, 50 Kan. App. 2d at 1172; *In re M.D.S.*, 16 Kan. App. 2d at 510. For example, if the parent already had a well-established relationship with an older child, a district court properly could find that a comparatively short period of incarceration could mitigate noncompliance with some aspects of a reintegration plan or otherwise weigh against termination. See *In re M.H.*, 50 Kan. App. 2d at 1172. In that circumstance, the condition of unfitness—the parent's

5

incarceration—reasonably could be viewed as likely to change in the foreseeable future."
*In re K.O.*, 2017 WL 2403304, at *4.

The facts here stand in rather graphic counterpoint to the discussion in *In re K.O.* and support the district court's finding of unfitness. C.P.'s crimes reflect a depravity inconsistent with either a tenable suggestion of a functioning moral compass or a behavioral exemplar cultivating good character in children. Nothing in the record suggests C.P. had what could be considered an especially wholesome parental relationship with his sons before the State intervened. The record evidence indicates the opposite. After his sons were removed from the home, C.P. had little contact with them and even that shrunk to nothing after he was jailed on the criminal charges—a period of more than 2 years leading up to the termination hearing. And, of course, C.P. will remain incarcerated until well after his children reach the age of majority. He cannot directly provide substantial care for them while he is in prison. In short, C.P.'s predicament—a predicament of his own making—has rendered him both unwilling and unable to construct and maintain any semblance of a normal parent-child relationship with his sons as they grow up.

The district court accurately assessed the circumstances and correctly concluded C.P.'s criminal convictions and his extended term of imprisonment made him unfit within the meaning of K.S.A. 2016 Supp. 38-2269(b)(5). The district court, likewise, correctly found those circumstances would not change in the foreseeable future and really could not possibly change until C.P. serves his sentences on the rape convictions. We are persuaded that the evidence would, to a high degree of probability, lead a reasonable fact-finder to determine C.P. was unfit to parent his sons and the condition of unfitness would endure for years to come.

C.P. argues that terminating his parental rights does not foster the best interests of his sons. His argument, however, rests mostly on the rhetorical assertion that because he

is in prison—and will be until his sons are adults—and because R.P.'s rights were not terminated, the preservation of his parental rights makes no practical difference. We are unpersuaded.

At this juncture, C.P. bears the burden of showing the district court erred in its best interests determination. The argument doesn't advance a good reason why the children would benefit from a continuing association with C.P., so much as suggest that such an association wouldn't be especially detrimental. That sort of "it could be worse" assertion doesn't satisfy C.P.'s burden, especially given our standard of review on the issue. We detect no legal error or misunderstanding of the relevant facts on the district court's part—and C.P. doesn't point to any—so the remaining question is whether no reasonable district court would have come to the same conclusion in these circumstances. We comfortably conclude other district courts would have found the termination of C.P.'s parental rights to be appropriate, meaning there has been no abuse of judicial discretion.

If C.P.'s parental rights were not terminated, his sons would grow up interacting with him only through the limited contacts and communications permitted inmates in the Kansas penal system and knowing him as the man who repeatedly sexually abused their older half-sister. A district court reasonably could conclude that situation would not be conducive to the children's emotional wellbeing, especially given their comparatively young ages. The absence of some evidence, expert or otherwise, suggesting the children would actually benefit from that kind of parental relationship buttresses the reasonableness of the district court's ruling.

C.P. has not shown reversible error. Based on the findings and conclusions regarding C.P.'s felony convictions and his ongoing incarceration, the district court properly terminated his right to parent G.P., Ro.P., Ri.P., H.P., T.P., and Ra.P. We may (and do) affirm the termination order on that basis alone.

We mention, however, that the evidence supports the other grounds of unfitness upon which the district court relied. C.P.'s sexual abuse of E.B. warrants a finding of unfitness under K.S.A. 2016 Supp. 38-2269(b)(2) not only as to her, as the victim, but as to any other children in the household. Likewise, C.P.'s failure to interact with his children after their removal from the home, an extended period leading up to the termination hearing, also constitutes unfitness as provided in K.S.A. 2016 Supp. 38-2269(c)(2). But we dispense with further review of those grounds, since any analysis would be legally superfluous and, thus, in the nature of dicta.

Affirmed.