NOT DESIGNATED FOR PUBLICATION

No. 125,199

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of B.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Crawford District Court; MARY JENNIFER BRUNETTI, judge. Opinion filed
December 30, 2022. Affirmed.

*Jason P. Wiske*, of Law Office of Jason P. Wiske, L.L.C., of Pittsburg, for appellant.

*Reina Probert*, county attorney, for appellee.

Before ISHERWOOD, P.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: A.H., the father of B.C., a girl born in mid-2017, appeals the
decision of the Crawford County District Court terminating his parental rights. A.H. and
B.C.'s mother were not married, and he provided no financial support before or after the
child's birth and had only limited contact with the child before he went to prison for
aggravated robbery. He remained in prison when the termination hearing was held and
presumably is still incarcerated. As a prisoner serving a lengthy sentence, A.H. was
unable to perform the core functions of a parent and could not carry out a reasonable plan
designed to allow him to do so, rendering him legally unfit. Those circumstances were
unlikely to change in the foreseeable future. And given the lack of any meaningful
relationship between A.H. and B.C., termination—opening up a ready adoption option—
advanced the child's best interests. We, therefore, affirm the district court.

1

The record shows A.H. had a few visits with B.C., totaling perhaps 12 hours, during the first few months of her life. He neither financially supported M.C., the mother, during the pregnancy nor did he support B.C. after her birth. In short, A.H. had no continuing relationship with B.C. from the start.

M.C. apparently has had chronic substance abuse problems, prompting the State to file this child in need of care proceeding in 2017. Because A.H. had not been officially identified as B.C.'s father, he was not then an interested party and, thus, a participant in the case. See K.S.A. 38-2241 (interested parties and authority of district court to confer interested party status). The district court adjudicated B.C. to be in need of care. The Department for Children and Families assumed legal custody of B.C., and she was placed with her maternal grandparents, where she apparently has resided throughout these proceedings.

The district court ordered paternity testing that in 2018 established A.H. to be B.C.'s father, and he was added as a party. The private social service agency the Department directed to design and oversee a plan for family reintegration did not include tasks for A.H. to accomplish until October 2019. The reason for the delay is not immediately apparent from the record.

As we have indicated, A.H. was convicted of aggravated robbery, a felony, and sentenced in 2018. At the termination hearing in this case, A.H. testified the earliest he could be released from prison is February 2023. In the meantime, M.C. has been imprisoned for a felony drug conviction and likely will not be out until four years after A.H.'s release.

Evidence at the termination hearing showed that A.H. has taken steps toward rehabilitation while he has been incarcerated. He received his GED, had begun vocational training, and attended sobriety meetings. He did not, however, send B.C. cards or gifts for her birthday or holidays or otherwise communicate with her, although telephone calls would have been difficult given her young age. The case plan for A.H. included finding suitable housing and gainful employment—tasks that would be customary components of a reintegration plan. They are, however, tasks that are exceptionally difficult, if not impossible, for an inmate to complete.

A.H.'s plan also included more modest objectives, such as taking parenting classes. But the pandemic curtailed or eliminated many services that had been available to inmates, including those classes. Similarly, telephone privileges were drastically restricted. So A.H. could not have communicated regularly by telephone or video with B.C. in the months leading up to the termination hearing.

The State filed a motion to terminate the parental rights of A.H. and M.C. in March 2020, and the district court held the termination hearing in February 2021. The evidence largely established what we have laid out thus far. The district court terminated M.C.'s parental rights, and she is not a party to this appeal.

The district court found A.H. to be an unfit parent on multiple statutory grounds, found his unfitness was unlikely to change in the foreseeable future, and found termination to be in B.C.'s best interests. See K.S.A. 38-2269 (statutory factors governing termination). The district court did not explicitly address A.H.'s request that a permanent custodian be named for B.C. as an alternative to termination. See K.S.A. 38-2269(g)(3) (court may consider appointing permanent custodian rather than terminating parental rights). A.H. has appealed.

On appeal, A.H. has focused on the limitations on him in completing a family reunification plan because of his incarceration, particularly after the pandemic and the reduction in rehabilitative services for inmates and in their ability to even communicate readily with family members and others on a regular basis. A.H. says he was similarly disadvantaged because he received reunification tasks late in this case, as a result of the time lag in establishing his paternity and then bringing him into the reintegration process. The argument has a superficially enticing quality. But it essentially sidesteps the law governing termination proceedings, particularly for inmates serving significant prison sentences. In short, convicted criminals receive no special consideration because of their incarceration and are held to the same standards as other parents in determining their unfitness. We address A.H.'s appeal by first setting out the governing legal principles and then applying them to this case.

*Governing Legal Principles*

A person has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., to codify processes for finding

children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home, the additional factors in K.S.A. 38-2269(c). In addition, the State may rely on one or more of 13 statutory presumptions of unfitness outlined in K.S.A. 38-2271. In this case, the district court drew from each of those sources to find A.H. unfit on six statutory grounds. A single ground, however, may be sufficient to establish unfitness. See K.S.A. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in termination of parental rights proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and

5

convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court's best interests determination is governed by a less stringent standard. As directed by K.S.A. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

*Applying the Principles*

Before looking at the district court's decision terminating A.H.'s parental rights, we mention one statutory ground the State did not pursue in its motion to terminate: A parent may be found unfit because of his or her "conviction of a felony and imprisonment" under K.S.A. 38-2269(b)(5). The State's omission seems inexplicable on this record. The district court did not rely on K.S.A. 38-2269(b)(5). Doing so almost certainly would have deprived A.H. of fair notice of the allegations of unfitness he needed to confront in the termination hearing and, in turn, would have compromised his

6

constitutional due process rights. See *In re A.J.*, No. 124,854, 2022 WL 15549863, at *5 (Kan. App. 2022) (unpublished opinion); *In re K.H.*, No. 121,364, 2020 WL 2781685, at *7 (Kan. App. 2020) (unpublished opinion).

The statutory bases for parental unfitness tend to overlap in many respects and often weigh rather similar circumstances. That's true here, so we focus on two of the statutory reasons the district court found A.H. to be unfit:

• Failure of reasonable efforts made by public or private agencies to rehabilitate the family, as provided in K.S.A. 38-2269(b)(7); and

• A parent's failure to carry out a reasonable court-approved plan to integrate the child into the parental home, when the child has been in an out-of-home placement for at least 15 of the preceding 22 months, as provided in K.S.A. 38-2269(b)(9) and K.S.A. 38-2269(c)(3).

Under those provisions, parents may be unfit when they do not complete substantial components of an appropriate family reunification plan. The failure need not be the result of a parent's willful indifference or negligent inattention. Ultimately, parental unfitness under the Code is not fault based but, rather, turns on a parent's ability to sufficiently care for his or her child. Neither inattention nor willful misconduct is a necessary condition for a judicial finding. A parent who tries hard yet cannot adequately care for a child is unfit within the meaning of K.S.A. 38-2269(a). See *In re M.P.*, No. 119,444, 2019 WL 2398034, at *4 (Kan. App. 2019) (unpublished opinion); *In re A.L.E.A.*, No. 116,276, 2017 WL 2617142, at *6 (Kan. App. 2017) (unpublished opinion). So failure for whatever reason may be sufficient.

As we have indicated, as a convicted felon serving an extended prison sentence, A.H. could not provide B.C. with the essential components of an adequate parent-child relationship, including an appropriate place to live and sufficient financial support. The

family reunification plan reasonably and properly included those objectives. A.H., however, seems to suggest he should be given some form of dispensation precisely because of his imprisonment. We have rejected that sort of argument as inconsistent with the purpose of and legislative intent behind the Code:

> "Basically, [Father] divines a categorical rule that would grant inmates some period of time after their release to complete reintegration plans, particularly with respect to components like maintaining suitable housing for their children that would be wholly impractical or impossible in prison. But the law is otherwise. This court has consistently recognized that incarceration typically does not delay or excuse completion of a reasonable reintegration plan. See *In re M.H.*, 50 Kan. App. 2d 1162, 1172, 337 P.3d 711 (2014); *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009); *In re M.D.S.*, 16 Kan. App. 2d 505, 509-10, 825 P.2d 1155 (1992)." *In re K.O.*, No. 116,704, 2017 WL 2403304, at *4 (Kan. App. 2017) (unpublished opinion).

And we have more recently said:

> "Not to put too fine a point on it, a person in prison typically cannot provide the physical supports associated with parenting a child, such as suitable housing, food, and clothing. Moreover, the parent is in no position to offer any sort of continuing moral or emotional direction for the child, let alone daily or otherwise routine positive interactions." *In re A.P.*, No. 121,537, 2020 WL 499816, at *4 (Kan. App. 2020) (unpublished opinion).

We find those observations well-taken and applicable here on the issue of A.H.'s unfitness at the time of the termination hearing.

In short, A.H. was unable to parent B.C. because of his extended incarceration and he could not complete fundamental components of the reunification plan as a result. (As an aside, "reunification" and "reintegration" are actually misnomers here. A.H. never had an established parent-child relationship with B.C. to reunify or reintegrate.) The evidence

presented at the termination hearing was sufficient for a rational fact-finder to conclude to a high probability that A.H. was an unfit parent under K.S.A. 38-2269(b)(7) and (c)(3) in February 2021. He did not and could not satisfy the requirements of an otherwise reasonable plan.

We are unpersuaded by A.H.'s argument that bureaucratic inequities sufficiently confounded him in pursuing the reunification plan to warrant denial of the State's motion to terminate. A.H. was initially given tasks comparatively late in the judicial proceedings—a delay that seems to have been the result of a slipup by the assigned social service agency. And his ability to complete some of the comparatively minor plan objectives were impeded by the prison system's pandemic lockdown. Regardless of those problems, A.H. could not have completed the principal components of the reasonable reunification plan precisely because he was incarcerated. His position effectively ignores the overarching purpose of the Code in balancing a parent's undeniably fundamental right to raise his or her child with the State's *parens patriae* duty to safeguard the physical and emotional well-being of the children within its borders. See K.S.A. 38-2201(a) (proceedings under Code "deemed to be pursuant to the parental power of the state"); K.S.A. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"); *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) (recognizing *parens patriae* foundation for proceedings).

And A.H.'s pitch for sympathetic consideration of his predicament falls short on closer examination. A.H. wound up where he was because of an ill-conceived notion to commit a serious felony. Those antisocial decisions have both direct and indirect consequences. The direct ones entail possible capture, prosecution, and conviction. The indirect ones commonly flow from conviction and include losing some fundamental rights, such as voting, and jeopardizing others, like parenting one's children.

9

Turning to the district court's determination that A.H.'s unfitness, as established at the termination hearing in February 2021, was unlikely to change in the foreseeable future, we find sufficient support in the record to satisfy the clear and convincing standard under our appellate review. A.H. did not directly challenge this part of the district court's termination order. But we look at it anyway.

The appellate courts have recognized that a parent's incarceration sometimes can be a form of unfitness that may sufficiently change to stave off termination. Typically, the courts consider the remaining time of incarceration, the age of the child, and the strength and durability of the parent-child relationship preceding imprisonment. See *In re M.H.*, 50 Kan. App. 2d at 1172; *In re M.D.S.*, 16 Kan. App. 2d 505, 510, 825 P.2d 1155 (1992); *In re A.P.*, 2020 WL 499816, at *4. Here, all of those considerations cut against A.H. By his own estimate at the termination hearing, A.H. would be in prison for another two years. He would not be able to immediately assume custody of B.C., upon his release, since he would have to secure adequate housing, employment, and childcare at the very least. In all likelihood, he would also have to demonstrate sufficient parenting skills to raise a six-year-old by demonstrating those skills in a series of incrementally longer visits with B.C. under the social service agency's auspices.

Child time similarly weighed against concluding A.H.'s unfitness would change in the foreseeable future for B.C. At the time of the termination hearing, she was about four years old, and A.H. would be unable to parent her for another two years or more—over half her life. Last, and perhaps most significantly, A.H. had no relationship with B.C. before he went to prison and had not taken any concrete steps to develop one while he was incarcerated, even in advance of the pandemic lockdown. We find no fault with the district court's determination against A.H. on foreseeable change.

Finally, A.H. argues the district court erred in finding B.C.'s best interests would be served by terminating his parental rights. A.H. folds into that argument the denial of

his request for the appointment of a permanent custodian without asserting any separate or distinct error in the district court's handling of that request. As we have said, the standards for assessing the child's best interests are comparatively relaxed. The district court must find termination serves those interests by a preponderance of the evidence, and we review for an abuse of judicial discretion.

What we have said to this point guides our analysis of the district court's best interests determination. Given B.C.'s age and lack of any relationship with A.H., we cannot say the district court abused its discretion in finding her best interests would be served by termination. Moreover, B.C. had been in a single placement with maternal relatives and had an adoption option within the family. Depositing B.C. with a stranger, albeit her biological father, at six years of age would not obviously be in her best interests under the circumstances.

In its termination order, the district court outlined the governing law and had a good grasp of the factual circumstances based on the hearing evidence. In those respects, A.H.'s situation was fairly straightforward. We decline to say no other district court would have concluded B.C.'s best interests favored termination.

Because we have found sufficient evidence to support the district court's decision to terminate A.H.'s parental rights under K.S.A. 38-2269(b)(7) and (c)(3) and no legal error in those determinations, we need not and do not consider the other statutory grounds outlined in the termination order.

Affirmed.